UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DENISE BONDS**, *an individual,*
and **SHENESIA RHODES**, *an individual,*
           Plaintiffs,

                                    Case No: 22-cv-11491
                                    Hon. F. Kay Behm Friedman

vs.

**COMPASS GROUP** ("Compass"),
a foreign for-profit corporation, **CROTHALL HEALTHCARE**,
a foreign for-profit corporation, jointly and severally,
(Collectively Compass/Crothall); and
**TENET HEALTHCARE CORPORATION**,
*a foreign for-profit corporation*,
**VHS OF MICHIGAN, INC**, *a foreign for-profit corporation,* d/b/a Detroit Medical
Center ("DMC")*,*
**VHS HARPER-HUTZEL HOSPITAL, INC.,**
*a foreign for-profit corporation*, jointly and severally,
(Collectively DMC and/or TENET),
           Defendants.

---

## THIRD AMENDED COMPLAINT AND JURY DEMAND

NOW COME Plaintiffs DENISE BONDS and SHENESIA RHODES, by and

through their counsel, **AZZAM ELDER and NINA KORKIS TAWEEL,** and

hereby file their Third Amended Complaint against Defendants as follows:

## <u>CLAIMS, PARTIES, AND JURISDICTION</u>

1. This is an action for violations of the law with regard to the retaliatory removal and retaliatory actions taken against Plaintiffs in violation of the Michigan Medicaid False Claims Act, MCL§ 400.610c; the False Claims Act, 31 USC § 3730(h); the Whistle Blowers Protection Act MCL 15.361; and the public policy of the State of Michigan, for concurrently placing Plaintiffs illegally in a false light, wrongful suspensions, wrongful discharge, intentional infliction of emotional distress, and racial discrimination.

2. This is also an action for violation of the Michigan Whistleblowers Protection Act, MCL 15.361 *et. seq.*, based upon retaliation against Plaintiffs because Plaintiffs have complained to OSHA, the Health Departments, Infectious Control Officers and Defendants about unsafe, unsanitary, and dangerous conditions which put hospital patients, hospital visitors, hospital staff, and the public at risk of contracting infections, diseases, and illnesses.

3. In addition, Defendants Crothall and Compass have violated the BullardPlawecki Employee Right to Know Act, MCL§ 423.501, *et. seq.,* when they failed to provide Plaintiffs with their complete personnel records.

4. Plaintiff DENISE BONDS is a resident of the County of Wayne, State of Michigan.

5.  Plaintiff SHENESIA RHODES is a resident of the County of Macomb, State of Michigan.

6.  Defendant COMPASS GROUP ("Compass") is a foreign for-profit corporation incorporated in the United Kingdom, with multinational operations doing business under numerous names and subsidiaries in the United States.

7.  Defendant CROTHALL HEALTHCARE ("Crothall"), is a foreign for-profit corporation, with its headquarters located at 1500 LIBERTY RIDGE DRIVE STE 210 WAYNE, PA 19087 USA. It is a subsidiary of Compass Group, a United Kingdom company.

8.  Defendant TENET HEALTHCARE CORPORATION, INC., ("Tenet") is a foreign for-profit corporation in Nevada. It is a multi-national, investorowned healthcare services company. As of March 2022, Tenet operated approximately sixty-eight (68) hospitals nationally. Tenet does business and has numerous subsidiaries it operates and controls in the State of Michigan.

9.  VHS OF MICHIGAN, INC., a wholly-owned subsidiary of Tenet Healthcare Corporation, is a foreign for-profit corporation in Delaware and doing business in Detroit, Michigan as The Detroit Medical Center ("DMC").

10. VHS HARPER-HUTZEL HOSPITAL, INC., a foreign for-profit corporation, is part of the DMC, doing business in Michigan as HarperHutzel Hospital

3

(comprising Harper University Hospital, Hutzel Women's Hospital, the CardioVascular Institute and DMC Surgery Hospital).

11. This lawsuit addresses violations of the law that occurred during and after Plaintiffs worked for Defendants Compass/Crothall at Harper-Hutzel Hospital, which is a subsidiary of Defendant Tenet Healthcare. Plaintiffs Bonds and Rhodes worked as housekeepers in environmental services and they are also Union Stewards for the Service Employees International Union (SEIU).

12. The amount in controversy herein exceeds $75,000.00 and this matter is otherwise appropriately before the Court pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship of the parties.

13. This matter is also appropriately before the Court pursuant to 28 U.S.C. § 1331. Plaintiffs have asserted a claim arising under federal law pursuant to 31 U.S.C. § 3730(h). *See also Graham Cnty Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 412; 125 S.Ct. 2444; 162 L.Ed.2d 390 (2005); *Tibor v. Michigan Orthopaedic Institute*, 72 F. Supp.3d 750 (2014).

## **FACTUAL BACKGROUND**

14. Harper-Hutzel Hospital is in the center of the City of Detroit, where the entire community relies on services from neighborhoods to everyday people who work in the downtown area. If anyone is in the downtown vicinity, or near this hospital

4

and has a heart attack, or is about to deliver a baby, an ambulance is likely to rush them to Harper-Hutzel Hospital.

15. Defendant Tenet's subsidiary, VHS, operates multiple hospitals commonly known as the "DMC" including Haper-Hutzel Hospital, in the Detroit area and features the full range of specialists, such as cardiologists, cardiac surgeons, vascular surgeons, pediatric cardiovascular surgeons, rehabilitation services, baby deliveries (including c-sections), obgyn services, and a nursing team that is cross-trained for any emergency or elective procedure.

16. Prior to 2019, Sodexo provided the environmental services to DMC hospitals.

17. Plaintiffs worked for Sodexo prior to working for Defendants Crothall and Compass.

18. Plaintiff Bonds was an awarded employee at Sodexo.

19. Plaintiff Rhodes was an awarded employee at Sodexo.

20. When Sodexo had the Tenet contract, Plaintiffs never ran out of supplies and had enough cleaning supplies, rags, mops, and essentials to properly sanitize patient rooms and operating rooms, per the established Sodexo protocols.

21. Under Sodexo, Plaintiffs were expected to use hospital-grade cleaning products and separate rags and mops in order to avoid cross contamination of areas. For example, the rags used to clean the bathrooms were not used to clean patient beds.

Operating rooms and discharges got elevated cleaning, including terminal cleaning.

22. Today, Defendant Tenet uses Defendant Crothall and/or Compass as contractors for environmental services across the country.

23. Around September 2019, Defendant Tenet hired Defendant Crothall to take over environmental service operations at the DMC from Sodexo.

24. Sodexo declined to make the extreme cuts being mandated by Defendant Tenet.

25. In 2019, Plaintiffs Bonds and Rhodes became full-time employees of Defendants Crothall and Compass until their termination in 2022.

26. Prior to being terminated, Plaintiffs Bonds and Rhodes worked in "housekeeping" and they were also union stewards.

27. As union stewards, Bonds and Rhodes had the responsibility of protecting/representing other employees from among other things, unethical and unsafe practices by Defendant employers.

28. Plaintiffs will demonstrate how Defendant Compass Group and its subsidiaries went to extreme measures to make more profits for themselves and Tenet Health. Defendant Compass Group has a long history of outrageous actions to cut costs in order to make more money.

29. In September of 2019, after assuming the contract at DMC, Defendants Crothall and Compass represented to Plaintiffs and other employees that they would honor

the terms of the Collective Bargaining Agreements (CBA) executed by Sodexo and Defendant Tenet/VHS.

30.In late 2019, Defendants Crothall and Compass presented their Code of Business Conduct Golden Rules to Plaintiffs and its employees, which state:



(50) Compass Five Golden Rules - YouTube

31.Plaintiffs have followed these Golden Rules by reporting violations to Defendants in person, by phone, and email.

32.Defendants have violated each one of their above-stated Golden Rules.

33.After Plaintiffs reported the concerns about safety, they were retaliated against by Defendants.

34.Defendants worked together to:
        a.     Silence plaintiffs;

b.    Falsely accuse Plaintiffs;

c.    Retaliate against Plaintiffs;

d.    Improperly suspend Plaintiffs;

e.    Discriminate against Plaintiffs;

f.    Lie about Plaintiffs;

g.    Violate safety rules which unnecessarily exposed Plaintiffs to the Covid-19 virus;

h.    Violate safety rules which put patients, employees, and visitors at higher risk of contracting an illness and/or being in danger;

i.    Intimidate Plaintiffs to stop raising safety concerns;

j.    Humiliate Plaintiffs;

k.    Financially hurt Plaintiffs as a means of retaliation; and

l.    wrongfully terminate Plaintiffs.

### Continues its Focus on Profit at the Expense of Care and Safety

35. Before Covid-19 became a pandemic, Defendants began to take extreme measures to cut spending.  Daily cleaning supplies were no longer available for housekeepers to do their jobs properly, and as time passed, things only got worse.

36. Defendants work together to avoid spending money on supplies and have done this across numerous hospital systems.

37. These cost-cutting measures have been extreme and Defendants have caused the hospital to become unsanitary, insanitary and unsafe.

38. Defendants intentionally kept the cleaning supplies short to make profits even when it meant the hospital became unsanitary and unsafe.

39. The cleaning protocols changed from best practices with Sodexo to deplorable with Crothall/Compass.

40. Plaintiffs have knowledge about how the cleaning and sanitization priorities changed from Sodexo to Crothall/Compass.

41. Defendants overwhelmed housekeepers with unreasonable expectations and required them to do additional work because the nursing staff was also kept in short supply.

42. For example, under Sodexo, Plaintiffs would use approximately fifty (50) rags to clean twenty-eight (28) patient rooms.

43. Under Defendants, Plaintiffs were given five (5) rags to clean the same 28 patient rooms.

44. Mops went from unlimited supply to not enough to do the job properly. Cleaning solutions that were "hospital-grade" were always out.

45. When Plaintiff Rhodes complained about the lack of supplies, managers announced to the staff that overtime would be cut because Plaintiff Rhodes is complaining about lack of supplies.

46. This humiliated Plaintiffs and caused other staff to get upset with Plaintiffs for speaking the truth as Defendants blamed them for overtime being cut.

47. When Plaintiff Bonds was harassed by her manager, she had to call security to intervene because of the aggressive intimidation and threats that Defendants' managers used to retaliate.

48. During Covid, Plaintiffs and other employees were treated like expendable furniture. Defendants did not follow Covid-19 rules to keep them safe, and they refused to provide Plaintiffs with personal protection equipment (PPE).

49. Plaintiff Rhodes was unnecessarily exposed to areas of the hospital where her chances of contracting Covid-19 were higher because Defendants failed to follow the Covid-19 rules designed to keep front line workers and others safe.

50. The commonsense approach of trying to stay safe to not contract Covid-19 was taken away from Plaintiffs by Defendants' actions and inactions.

51. Plaintiff Rhodes was exposed to Covid-19 while at work because of Defendants' negligence and indifference to what they consider lower level housekeepers.

52. Early on during the Covid-19 pandemic, Plaintiff Rhodes was given an n95 mask from a physician, but Defendants took away her n95 mask and told her that she is not a doctor or nurse, and that housekeepers should not be wearing n95 masks.

53. As a result of Defendants' actions, Plaintiff Rhodes and her family ended up with Covid-19 prior to vaccines being available to them.

54. Plaintiff Rhodes contracted Covid-19 three (3) times from work, and Defendants refused to pay her while she was out sick, and they also refused to pay her earned sick and vacation time.

55. Other similarly situated employees ended up dying from the coronavirus, or sustained permanent disabilities.

56. One front line hero who ended up in a coma because of Covid-19, who recovered but had to use an oxygen tank,  tried to come back to work to support his family. Defendants Compass/Crothall ended up finding ways to terminate this employee and documents were falsified to cover-up the recording requirements.

57. Defendants violated the rules requiring proper documentation of employees who ended up with the coronavirus.

58. Plaintiffs repeatedly tried to get Defendants to follow the rules and laws, to no avail.

59. Plaintiffs even tried to work through their union leadership to get the attention of
the CEOs. Below is one example:

---------- Forwarded message ----------
From: **Denise Bonds** <denisebonds55@gmail.com>
Date: Sat, Dec 11, 2021, 7:39 PM
Subject:
To: Mullins, Kimberly <Kimberly.Mullins@crothall.com>, Leap, Travis <Travis.Leap@crothall.com>, Pierce, Kim <Kim.Pierce@crothall.com>, Steinhoff,
Kurt <Kurt.Steinhoff@compass-usa.com>


Crothall is in violation of MIOSHA, we as employee's are to be fitted for N95.


**From:** Ken Haney [mailto:ken.haney@seiuhealthcaremi.org]
**Sent:** Wednesday, April 28, 2021 3:19 PM
**To:** Rapp, Susan
**Cc:** Kent, Quadiru; Noble, Carl; Kevin Lignell; Mary Nelson
**Subject:** Fwd: EVS/Harper Hospital Complaints


I am attaching these videos and statements that the employees in the EVS department are complaining about. As you may not be aware there are about 12 to 15 employees in that
department who have contacted the Covid 19- Virus over the last two weeks.  The videos below are indicating that the employees are using rags to mop the floors and a
consistent lack of cleaning supplies, a video also shows that the manager has been hoarding the supplies, Some members also have a complete calendar of days that the lack of
supplies happens, which is attached. This seem to be a everyday occurance which a complaint was filed on the hot line. As of Wednesday the 27th the afternoon shaft was given
three (3) rage per person to clean up. I truly believe this is not sustainable to contain the spread of the virus, but I'm not an expert when it comes to this. I will forward these videos
to the proper personal to hopefully help where needed.

12

---------- Forwarded message ---------
From: **Gregory, Audrey** <AGregory@dmc.org>
Date: Wed, Apr 28, 2021 at 4:41 PM
Subject: RE: EVS/Harper Hospital Complaints
To: Ken Haney <ken.haney@seiuhealthcaremi.org>, Rapp, Susan <SRapp@dmc.org>
CC: Kent, Quadiru <QKent@dmc.org>, Noble, Carl <CNoble@dmc.org>, Kevin Lignell
<kevin.lignell@seiuhealthcaremi.org>, Mary Nelson <mary.nelson@seiuhealthcaremi.org>

Ken:

Thank you for bringing these concerns to our attention. Please know we take the concerns
seriously. My team will review and follow up regarding the outcome and any appropriate
resolution from the review.  Thanks again for the opportunity to review these concerns.

Audrey Gregory, Ph.D.

Group Chief Executive Officer

Detroit Medical Center (DMC)

60. Defendants worked together and were unwilling to spend money to meet
minimum requirements, yet they were open to the public for business and billed
Medicare and Medicaid, carrying on with business as usual.

61. Defendants worked together to violate OSHA rules relating to "fit tests" and
falsified documentation regarding same.

62. Proper PPE was not provided to protect Plaintiffs or other front line workers in
order to save money – essentially Defendants were only concerned with making
money over saving lives.

63. Defendants violated and falsified Certificates of Participation in order to bill
Medicare and Medicaid.

## **TENET HEALTHCARE AND ITS DETROIT SUBSIDARIES**

64. Defendant Tenet owns for-profit hospitals throughout the country.

65. In 2013, Tenet purchased VHS, Inc., which owned DMC Harper-Hutzel Hospital.

66. Michigan residents who rely on hospital care have been unnecessarily exposed to the unsafe conditions created by corporate greed, and front-line heroes have been hurt and retaliated against by Tenet.

67. The Legacy DMC Monitoring Board was set up in 2011 to ensure Tenet complied with its promises to invest in the DMC.  The Legacy DMC Board struggled and was unable to enforce any Tenet breaches because they had no tools to hold Tenet accountable. Tenet ignored repeated concerns about patient safety concerns raised by the Legacy DMC Board.

68. Much of the money that Defendants Tenet/DMC receive comes from state and federal Medicare and Medicaid funds. Those funds are regulated pursuant to state and federal law.

69. Tenet has a history of violating the law in order to enrich the company, its owners and Tenet hospitals.

70. Tenet's motives and actions of unethical behavior of "cheating" and paying fines every few years is a way that they make millions.

71. In 2006, Tenet agreed to pay the Department of Justice ("DOJ") $725 million to settle allegations of illegal Medicare payments to Tenet hospitals and entered into

a 5-year corporate integrity agreement that required the company to provide financial reports to the government.

72. In 2012, Tenet agreed to pay $42.75 million to resolve allegations that it violated the False Claims Act by overbilling Medicare.

73. In September 2016, Tenet entered into a "Settlement Agreement" and Non-Prosecution Agreement ("NPA") with the United States and certain states. It agreed to pay a $514 million dollar fine for engaging in healthcare fraud by making false claims for public funds under a kickback scheme relating to certain alleged medical services.

74. In addition, in January 2017, the DOJ indicted the Tenet Healthcare Senior VP of Operations, John Holland, on four (4) counts of fraud. The indictment states that Holland and others were part of a larger scheme to "unlawfully enrich themselves, Tenet, and the Tenet Hospitals" by engaging in fraud. Specifically, it was alleged that Mr. Holland sidestepped Tenet's internal accounting controls to bribe clinicians and pay illegal kickbacks to clinics in Georgia and South Carolina that referred pregnant patients on Medicaid to Tenet hospitals. The scheme allegedly helped Tenet bill Medicaid programs for more than $400 million.

75. In September 2017, several more charges were brought against Mr. Holland. The latest indictment charged Holland with conspiracy to violate the federal Anti-Kickback Statute, wire fraud and falsification of books and records.

76. As part of the various agreements Tenet has entered into with the U.S. government, they are **required to "self-report" any violations of law or regulations and any questionable conduct**. Senior management, including these executive Defendants, have failed to do so and have *blatantly allowed legal violations* to occur in order to generate more income by cutting medically necessary support and services and allowing unnecessary medical procedures, among other things.

77. Plaintiffs will demonstrate how Defendants worked together to cut essential spending, which resulted in unsafe conditions at the hospitals.

78. Defendant Tenet is a for-profit company.

## TENET HIRES CROTHALL/COMPASS

79.    In late September 2019, Defendant Tenet hired Defendant Crothall to take over Environmental Service operations at DMC from Sodexo.

80.    Defendant Tenet hired Defendants Compass/Crothall to implement costsavings, which resulted in abusive tactics causing unsanitary hospital conditions.

81.    Defendants conspired to work together to squeeze every penny out of the DMC/Detroit community to send the profits to their corporate headquarters.

82.    Defendants have set up five star and beautiful websites to give the impression that they are compliant with laws and safety regulations. This is a sham.

83.    Defendants have set up websites and hotlines for compliance, which are also a sham.

84.    Contrary to their websites and written policies, Defendants have a reputation, history, and modus operandi of terminating employees and contractors who dare to speak up about safety concerns.

85.    They also have a history of putting together sham employee reviews to justify terminations of good employees.

**Plaintiffs Report Violations of the Law Which Compromised Patient Safety and Employee safety**

86.    Throughout the course of their relationships with Defendants, Plaintiffs reported multiple, significant violations of the law at Harper Hutzel Hospital to Defendants Tenet, Tenet ethics & compliance, DMC leadership, and Defendant Tenet executives and management.

87.    Plaintiffs would report issues and violations in person, by email, by phone, and even by text. Here is one example relating to lack of supplies and the photos below were taken on **multiple** days:



88.    On several occasions, there were no rags or mops to use for cleaning and

Plaintiffs were told to use "Brawny" paper towel to clean and sanitize.



89.     It was very common to be out of mandated hospital-grade cleaning solutions, rags, mops, and other essential supplies.

90.     Throughout the course of their relationships with Defendants, Plaintiffs reported multiple, significant violations of law at Harper Hutzel hospital to Defendants Compass, Crothall, Compass leadership and Crothall leadership. Plaintiffs refused to acquiesce in these violations.

91.     Throughout the course of their relationships with Defendants, Plaintiffs reported multiple, significant violations of the law at Harper Hutzel hospital to the Michigan Occupational Safety and Health Administration, Tenet Ethics & Compliance, Crothall Health and Safety Committee, Convercent, Tenet, Tenet compliance, DMC leadership, and Defendant Tenet executives and management. Plaintiffs refused to acquiesce in these violations.

92.     Plaintiffs reported concerns about operating rooms being unsanitary and Defendants prioritized saving money to the point that it created an unsafe hazard at the hospital.

93.     Photos taken on separate dates in late 2021 and this year (2022) show that the mandatory terminal cleaning was not being conducted as required in the operating rooms, causing babies and mothers to be subjected to

unsanitary conditions created by Defendants who bill Medicaid and Medicare as if they are operating a clean and safe hospital.



94.  Plaintiffs complained to Defendants repeatedly about the safety issues and Defendants either ignored them or just gave excuses.

95.  The lack of supplies to clean patient rooms and operating rooms was shockingly outrageous, and in some instances, possibly criminal.

96.  Since the Plaintiffs have been terminated from their employment, evidence will show that Defendants are now scrambling to try and cover-up these systemic violations caused by corporate greed. Defendants are working together to falsify facts on the ground.

97.     Defendants' CEOs and/or upper level management are working hard to cover-up this outrageous situation. As of last week, they are conducting site visits and conferring together to cover-up issues about which Plaintiffs complained.

98.     Prior to being terminated, Plaintiffs began to take their concerns up the management chain and to OSHA.

99.     Plaintiffs filed complaints with OSHA about the lack of supplies. Below are two such examples:



Michigan Department of Labor and Economic Opportunity
Michigan Occupational Safety and Health Administration
www.michigan.gov/miosha

[X] General Industry Safety and Health          [ ] Construction Safety and Health

**NOTICE OF ALLEGED SAFETY OR HEALTH HAZARDS**

Complaint Number: _____

It is unlawful to make any false statement, representation or certification in any document filed pursuant to the Michigan Occupational Safety and Health Act of 1974, as amended. Violators can be punished by a fine of not more than $10,000, or by imprisonment of not more than six months, or by both (Section 35(7)).

[X] I have read the statement above and agree that the information I am submitting on this complaint is truthful and accurate to the best of my knowledge.

| Establishment Name: | Crothall Healthcare | | |
|---|---|---|---|
| Worksite Address: (Street, City, State, Zip) | 3990 John R St  Detroit, MI 48201 | | |
| | Site Phone: | 313-745-8040 | Site Fax: |
| Employer Mailing Address: (if different from worksite) | 1500 Liberty Ridge Dr. Suite 210  Wayne, PA 19087 | | |
| | Mail Phone: | 800-447-4476 | Mail Fax: |
| Management Official: | Kim Mullins | Telephone: | 313-833-5300 |
| Type of Business: | Environmental Services | | |

**HAZARD DESCRIPTION/LOCATION.** Briefly describe the hazards you believe exist. Include the approximate number of employees exposed to or threatened by each hazard. Specify the particular building or worksite where the alleged violation exists.

Crothall has a problem with supplies, having a consistent basis, so employees can keep the patients in a safe and healthy environment. Crothall has a serious problem with keeping supplies on a regular, we are in a PANDEMIC and it saddens me that I am not able to clean and keep patients,staff and employees safe. Harper Hospital is the facility with this problem.

21

Michigan Department of Labor and Economic Opportunity
Michigan Occupational Safety and Health Administration
www.michigan.gov/miosha

[X] General Industry Safety and Health        [ ] Construction Safety and Health

**NOTICE OF ALLEGED SAFETY OR HEALTH HAZARDS**

Complaint Number:

It is unlawful to make any false statement, representation or certification in any document filed pursuant to the Michigan Occupational Safety and Health Act of 1974, as amended. Violators can be punished by a fine of not more than $10,000, or by imprisonment of not more than six months, or by both (Section 35(7)).

[X] I have read the statement above and agree that the information I am submitting on this complaint is truthful and accurate to the best of my knowledge.

| Establishment Name: | Crothall Healthcare | | |
|---|---|---|---|
| Worksite Address: (Street, City, State, Zip) | 3990 John R. St   Detroit, MI 48201 | | |
| | Site Phone: | 313-745-8040 | Site Fax: |
| Employer Mailing Address: (if different from worksite) | 1500 Liberty Ridge Dr # 210  Wayne, PA 19087 | | |
| | Mail Phone: | 800-447-4476 | Mail Fax: |
| Management Official: | Kim Mullins, Kim Pierce | Telephone: | 313-629-8098 |
| Type of Business: | Environmental Services | | |

**HAZARD DESCRIPTION/LOCATION.** Briefly describe the hazards you believe exist. Include the approximate number of employees exposed to or threatened by each hazard. Specify the particular building or worksite where the alleged violation exists.

Harper Hospital is not safe and is a hazardous that is operated by Crothall Healthcare in the EVS department. Crothall Healthcare has a serious problem with keeping supplies, rags, mops, trash bags, chemicals, etc. February, 2021 up to now  October, 2021 has been and is still an ongoing problem with keeping supplies. EVS department is to keep the facility clean, safe and from hazardous at Harper Hospital. In order to keep a clean and safe facility we need to have supplies on a regular basis. We are in a PANDEMIC. At one point the virus(Covid-19) hit the EVS Department hard, I'm no expert, but do to no supplies is a hazardous, unsafe, and unclean facility. That's a violation, there are 150 employees within the EVS Department, and it's time for someone to pay a visit and intervene on behalf of safety at Harper Hospital.

100.     Plaintiffs     filed     complaints     with     OSHA     about     Defendants

Compass/Crothall not providing PPE n95 masks to front line employees:

Michigan Department of Labor and Economic Opportunity
Michigan Occupational Safety and Health Administration
www.michigan.gov/miosha

[X] General Industry Safety and Health        [ ] Construction Safety and Health

**NOTICE OF ALLEGED SAFETY OR HEALTH HAZARDS**

Complaint Number:

It is unlawful to make any false statement, representation or certification in any document filed pursuant to the Michigan Occupational Safety and Health Act of 1974, as amended. Violators can be punished by a fine of not more than $10,000, or by imprisonment of not more than six months, or by both (Section 35(7)).

[X] I have read the statement above and agree that the information I am submitting on this complaint is truthful and accurate to the best of my knowledge.

| Establishment Name: | Harper Hutzel Hospital | | |
|---|---|---|---|
| Worksite Address: (Street, City, State, Zip) | 3990  Detroit, MI 48202 | | |
| | Site Phone: | 313-745-8040 | Site Fax: |
| Employer Mailing Address: (if different from worksite) | 1500 Liberty Ridge Dr. #210  Wayne, PA 19087 | | |
| | Mail Phone: | | Mail Fax: |
| Management Official: | Kim Mullins | Telephone: | 800-447-4476 |
| Type of Business: | Healthcare | | |

**HAZARD DESCRIPTION/LOCATION.** Briefly describe the hazards you believe exist. Include the approximate number of employees exposed to or threatened by each hazard. Specify the particular building or worksite where the alleged violation exists.

Employees within the EVS Department has not been fitted for N95 masks,  employee's have been cleaning Covid rooms without N95s mask. Crothall is to supply employees with N95s masks. Employee's have been cleaning Covid rooms without N95, Crothall is to supply employee's with N95s.

22

101.    As a result of Plaintiffs' complaints to OSHA, Defendants Crothall/Compass were recently fined by OSHA.

102.    The fine upset Defendants and the retaliation and mission to terminate Plaintiffs became Defendants' main focus.

103.    Sadly, Defendants paid the fine and continued business as usual.

104.    Plaintiffs reported *pesticide roach, mouse, and ratproblem* to Defendants and asked that they provide proper solutions, but instead Defendants retaliated against Plaintiffs with false accusations - they accused Plaintiffs of not cleaning their assigned areas.

105.    Defendants have cut all pesticide and exterminator services and problems with pests, mice, and rats have been reported by numerous employees, including Plaintiffs, some of whom have also been retaliated against and fired.

106.    Defendants conspired and worked together to implement the extreme cost-cutting measures and anyone who dared to speak out about legitimate concerns was subject to retaliation, including Plaintiffs.

107.    Instead of complying with the law, Defendant Tenet would rather pay fines and settlements as their cost of doing business.

108.    **For several years, the Detroit community has had to endure lies from Tenet DMC about how safety is their number one concern. The reality is that they are habitual violators of the law and have breached their responsibility to run sanitary hospitals in Michigan.**

109.    For years, Defendant Tenet has put on a show like they are fixing the problems, but in reality, they do nothing to fix the safety problems and refuse to spend money on Detroit, opting instead to send it to Dallas.

110.    A CMS certificate of participation requires hospitals to represent that their hospitals meet all safety and sanitary requirements in order to bill Medicare.

111.    State Medicaid requires a certificate of participation that the hospitals meet safety and sanitary requirements in order to bill Medicaid and Medicare.

112.    Defendants' improper and fraudulent conduct at the DMC Harper Hutzel reported by Plaintiffs, includes, but is not limited to:

    a.  Operating and billing Medicare and Medicaid for procedures knowing that the surgical equipment, operating rooms, and patient rooms were not sterile as required as part of the Certification of Participation;

    b.  Knowingly putting patients, employees, and visitors at risk of contracting life-threatening diseases;

    c.  Knowingly submitting claims for payments to CMS and the
State of Michigan that were false and/or fraudulent;

    d.  Knowingly violating safety rules for hospitals, including among others, OSHA, CDC, CMS, fire hazards, and more;

    e.  Knowingly falsifying employee training records and tests/certifications;

    f.  Violating Covid-19 protocols;

    g.  Falsifying Certification requirements to bill Medicare and Medicaid;

    h.  Falsifying safety pledges;

    i.  Knowingly operating a hospital without enough supplies to meet safety standards and rules; and

    j.  Knowingly operating a hospital without proper working equipment to meet safety standards and rules.

113.    A quick review of history from local news makes this point.  In 2018, Harper Hospital was cited for safety concerns.

114.    In this case, Plaintiffs will demonstrate that the conditions cited above have continued and, in some areas, have gotten worse.

115.    When LARA (the State of Michigan regulation department), JHACO, OSHA, or other inspectors visited Harper Hutzel Hospital, Defendants worked together to ensure the problem areas in the hospital were not disclosed to inspectors. Housekeeping staff were instructed to help put on a show of compliance when in reality, inspectors were kept away from areas that would reveal problems.

116.    Leaks are a constant problem in operating rooms and patient areas because

Tenet fails to honor its commitment to spend enough money to improve

the hospital infrastructure pursuant to their purchase obligations:







117.    Defendants have a history of using retaliation to silence good doctors, good nurses, good housekeepers, and good employees who speak up when safety issues need to be fixed.

118.    In 2019, Tenet lost a trial and was required to pay over $11 million dollars to heart doctors who worked at this same hospital (in this case Harper Hutzel), and these doctors raised concerns about patient safety and reckless cost-cutting, which impacted patient safety.

119.    In 2020, during the Covid 19 pandemic, while Defendants gave lip service to frontline heroes, they knowingly failed to spend money to follow Covid-19 protocols to protect nurses, doctors, and patients.

120.    On May 15, 2022, the Detroit News reported that DMC hospital is at risk for violating federal standards.

121.    On May 18, 2022, the Detroit News reported a DMC hospital possibly losing eligibility for Medicare and loss of participation in Medicaid due to a years-long history of safety problems identified in the regional health care system.

122.    Defendants have a long history of being underhanded in making profits and paying fines along the way. This is how Defendants do business. The fines appear

large, but they pale in comparison to the profits they make. It is obvious that the fines have not deterred their abhorrent behavior:

> a. Tenet has been given numerous chances and has signed numerous Non-Prosecutorial Agreements, which have not stopped the greed.

123.   Across the county, these Defendants are creating dangerous conditions in hospitals by failing to spend money on essential supplies even though Defendants have had record breaking profits.

124. Unions across the country have raised safety concerns regarding Defendants intentionally not buying adequate supplies to clean the hospitals adequately:

> a. In Michigan, the SEIU union has complained about Defendants not providing patients with a safe and clean environment;

> b. In California, the National Union for Healthcare Workers raised the alarm about Defendants intentionally not providing adequate supplies to keep the hospital sanitary.

**Defendants Retaliate Against and Terminate Plaintiffs**

125.   Around January 2021, Defendants sought more aggressive ways to force Plaintiffs to release their claims, or if necessary, to terminate them from their employment in retaliation for the actions described above.

126.    Plaintiffs have made numerous complaints about patient safety concerns and violations of laws and safety rules.

127.    Plaintiffs tried to work through local management and when the concerns were ignored, they kept trying to find someone who would listen.

128.    Plaintiffs would routinely share common sense information with the managers of Defendants.

129.    Defendants' managers would consistently tell Plaintiffs to stop complaining, or they would lose their jobs.  Defendants' managers made it clear that they did not care about patient safety concerns.

130.    If any concern required spending money, Defendants would eventually retaliate against Plaintiffs because they spoke up.

131.    On April 27, 2022, Plaintiff Rhodes sent an email to Tenet and Crothall/Compass leadership:

> I Shenesia Rhodes had the privilege of working as a contracted employee inside of DMC hospitals Sporadically since 2000. I've been a Stellar Employee everyone that crosses my path knows of my deep integrity and compassion for DMC to expand with Success,
>
> but unfortunately my complaints about patient safety issues have fallen on deaf ears and I find myself being targeted and retaliated against.
>
> My repeated complaints are intentionally being ignored and dismissed and this is very troubling to say the least.

Especially since I am following protocols by bring complaints to leadership and compliance and things keep getting worse. Environmental services is a critical part of any health system. We are the front line employees who are trusted to sterilize and keep the hospital clean for patient and employee safety. DMC and Tenet leadership has had a bad history of having a very bad sanitary environment even though this problem has been around for too long its never fixed and you only cover it up every time a news story surfaces. Crothall who I work for has made it clear that patient safety is not anyone's priority and only costs reductions and profits rule their decisions and that's why they get the business from Tenet.

My complaints are well documented and you have them and are aware of them. I feel like the retaliation against me and other employees who speak up is getting to be to very hostile.

I've witness and engaged in conversations with patients and staff about the fatalities because lack of medical / cleaning supplies .I've requested by email or phone calls and informed my administrators and DmC Corporate. I've called compliance officers , made Tenet Reports on these severe infractions... No one has improved these issues...I've been Afflicted with COVID 19 three times while being forced to go inside rooms that had no signs of COVID or PUI posted from Tenet without a fit test or n95 or any PPE from Crothall Compass to protect me or my child that I exposed to the virus by bringing it home each time.

The more I reported my Valid concerns the more retaliation of bullying with several Suspensions and inappropriate threats with intimidating managers telling me to Leave the Company or Shut Up complaining about Not having Cleaning Supplies.

30

I believe that this is allowed to happen because DMC is in Detroit and mainly treats vulnerable patient population mainly black and elderly. I don't believe this happens in Dallas. How can leadership sit back knowing that there are not enough sterilization supplies to clean patient rooms and operating rooms. Blood and human remains are cleaned with unclean reusable supplies because supplies are always out of stock or rationed. You have patients being operated on in ORs trusting that they are sterilized and clean when they are not. You have mothers giving birth to new born babies trusting that the ORs are sterilized and clean but they are not.

Ive been stressed and mental exhaustion with the amount of harsh pressure and harassment I am continuously under by Crothall leadership.. I've sacrifice a tremendous part of my Life to provide a Protective Safe Environment for Employees and most of all the Patients of DmC Tenent and Crothall Compass Group Healthcare. If you take patient's money and bill medicare and Medicaid for services then the ORs and hospital rooms must be sterile and clean if they knew that the ORs and rooms were filled with disgusting conditions they would never pay. You have known that they are not clean and you know that this unsafe condition has caused harm to so many and yet you do nothing to fix it. The retaliation for speaking up has caused my family and I to have a financial debt, Severe Cardiac and Mental Health Problems and my daughter to have a incurable Disease Forever. Because of the profound negligence of ignoring my Plea for Equality to be treated like you would treat your own loved one's. Instead of retaliating against me, I believe you should be calling me to learn more about the dangers your leadership has allowed to fester in the hospital. If you don't take my complaints seriously the contamination of bacteria's, viruses, and diseases will continue to infect the population outside the hospitals and the public will never know why. That's why I am pleading with you to listen instead of harassing and retaliating against me. Please take my complaints seriously it should not be just about money if

31

you want to be in health care then patient safety should
always be the number one priority.

132.   Plaintiff Bonds has endured multiple false accusations from Defendants, some
of which were reversed.  After the false accusations were reported to Tenet and the
National Labor Relations Board, the manger voluntarily voided the suspensions.
However, when she began to send complaints to the hospital's management and to
Compass mangers at headquarters, the retaliation became unstoppable, which lead
to her wrongful termination.

133.   In addition to multiple other complaints made, below is yet another example
where Plaintiff Bonds did her best to get the attention of Tenet managers to try
and get them to stop violating basic rules and keep the hospital safe and sanitary:

--------- Forwarded message ---------
From: **Denise Bonds** <denisebonds55@gmail.com>
Date: Fri, May 6, 2022, 5:10 PM
Subject: Re: Update on reports
To: Tenet Ethics Department <Ethics@tenethealth.com>


Dear alva maria
And tenet company


You cannot forward my complaints to Crothall and wash your hands by saying its not your problem.  You have known that crothall has saved you money which is your only priority.
You have ignored my complaints of unsanitary concerns precovid, drying covid, and even now.  Supplies are never adequately available.  Your operating rooms are unsanitary. And
dangerous to the poor patients who trust you to operate a clean and sanitary hospital. But you intentional put your heads in the sand. You lie to regulators and you bill the federal
government alot of money even tough you are aware that you are not compliant with the rules to bill them. Even this week you were in the news again and you respond by telling
more lies.  This community deserves clean hospitals.  Please spend more money on supplies and fix the areas that need to be fixed. When you bought the hospital you promised to
run it better than a non profit but the truth is that you only care about profits and nobody else.  Please keep your promise that you made.
Denise Bonds

134.   Later, in May 2022**,** both Plaintiffs were abruptly  terminated. As of that time,

and throughout their employment with the Defendants, Plaintiffs had excellent

reputations at the hospital.

### Defendants Retaliate Against Plaintiffs & Pressure
### Other Employees to Help Cover Up

135.   Based on Plaintiffs' ongoing complaints about fraud and safety while still

employed, and because they refused to stay quiet about safety concerns, Defendants

became obsessed with terminating Plaintiffs.

136.   Defendants used tactics to paint Plaintiffs in a false light.

137.   Since  Plaintiffs'  termination,  Defendants  are  manipulating  other

employees and threatening their jobs if they do not back-date certain

documents.   When Plaintiffs wrote concerns about being out of some

supplies, Defendants retaliated by suspending Plaintiffs.

138.   Defendants have recently brought in microfiber mops after terminating

Plaintiffs.   This is part of the cover-up because they know that

investigations are coming.

139.   Defendants are currently asking employees to falsify certifications and

other documents about supplies, training, past training, and other

documents in anticipation of inspections and/or lawsuits.

## **Candida Auris fungus a Serious Global Health Threat**

140.   Prior to Plaintiffs being terminated from their employment, they expressed

concerns to Defendants; management that they heard that DMC Sinai Grace was

dealing with the Candida Auris fungus.

141.    Plaintiffs expressed concerns about the dangers being created by the

outrageous cuts in supplies that were made by upper level managers.

These reckless actions likely increase the chances of this new danger,

Candida auris, to survive and thrive in an unsanitary hospital like Harper

Hutzel.   Plaintiffs were retaliated against for raising these concerns.

142.    According to the CDC, *Candida Auris* is an emerging fungus that presents

a serious global health threat. Candida auris | Candida auris | Fungal

Diseases | CDC

143.    As of this week, Plaintiffs as union stewards, have been getting calls from

current employees of Defendant Crothall/Compass who are concerned

because the DMC nursing staff has stated that *Candida auris* is now being

detected at Harper Hutzel Hospital, but none of the Defendants have

notified the employees, patients, or visitors who will be exposed to this

new danger.

144.    *Candida auris* typically spreads in hospitals and other care facilities through contact with contaminated surfaces or equipment.  However, it can also spread from person to person. People with *Candida* may shed the fungus through their skin cells. To limit the spread of *C. auris*, **cleaning, hygiene, and sanitation are crucial.**

Candida auris: Symptoms, spread, and outbreak risk (medicalnewstoday.com)

## <u>REFUSAL TO TURN OVER</u> <u>PERSONNEL RECORDS</u>

145.   Shortly after being terminated, Plaintiffs contacted Defendants Crothall and Compass and requested their personnel records pursuant to the Bullard-Plawecki Employee Right to Know Act, MCL § 423.501, *et. seq.,* in order to obtain their complete personnel records, and any "complaints" and/or "investigations."

146.    MCL §423.510 defines "personnel record" as "a record kept by the employer that identifies the employee, to the extent that the record is used or has been used, or may affect or be used relative to that employee's qualifications for employment, promotion, transfer, additional compensation, or disciplinary action."

147.    Defendants refused Plaintiffs' request.

148.    Plaintiffs were forced to file this lawsuit to obtain their personnel records pursuant to MCL § 423.501, *et. seq.* Desperate to keep the "investigation"

away from them, Defendants sought and continue to seek to make false

public statements about Plaintiffs with regard to an "investigation" and

"violations" while refusing to hand over any evidence thereof.

149. Defendants have also refused to turn over their investigation into Plaintiffs'

complaints about safety violations, lack of supplies, fraudulent

documentation, false documentation, false training, violations of OSHA

rules, violation of CMS rules, violations of CDC rules, and other

violations.

150. For all the foregoing reasons, Plaintiffs demand judgment against

Defendants jointly and severally as follows:

**A.    LEGAL RELIEF**

a.    Economic, noneconomic and compensatory damages
in whatever amount they are found to be entitled;

b.    Exemplary damages in whatever amount they are
found to be entitled;

c.    Punitive damages in whatever amount they are found
to be entitled;

d.    Statutory damages, and common law damages;

e.    Liquidated damages, treble damages, and double
damages in whatever amount they are found to be
entitled;

f.    An award of interest, costs and reasonable attorney
fees;

g.   Plaintiff is entitled to compensatory, exemplary, punitive, and treble damages;

h.   Compensatory damages in whatever amount Plaintiffs are found to be entitled to.

i.   Judgment for lost wages, past and future, in whatever amount Plaintiffs are found to be entitled to;

j.   An award for the value of lost fringe and pension benefits, past and future;

11.   Mental Distress Damages;

12.   Emotional Distress Damages; and

13.   The damages available include compensation for psychological injuries such as humiliation, embarrassment, outrage, disappointment, and mental anguish that have resulted from the discrimination.

**B.   EQUITABLE RELIEF**

1.   An order from this Court placing Plaintiffs in the position they would have been in had there been no wrongdoing by Defendants, including reinstatement with back pay;

2.   An injunction out of this Court prohibiting any further acts of wrongdoing by Defendants;

3.   An Order requiring Defendants to immediately produce Plaintiffs' personnel records;

4.   An award of interest, costs and reasonable attorney fees; and

5.  Whatever other equitable relief appears appropriate at the time of final judgment.

## COUNT I
## VIOLATION OF THE MICHIGAN MEDICAID FALSE CLAIMS ACT, MCL § 400.610c (as to all Defendants)

151.  Plaintiffs repeat and re-allege each and every preceding paragraph as if fully set forth herein.

152.  The Michigan Medicaid False Claims Act ("Michigan Medicaid FCA") is an act "to prohibit fraud in the obtaining of benefits or payments in connection with the medical assistance program; to prohibit kickbacks or bribes in connection with the program; to prohibit conspiracies in obtaining benefits or payments; ... to provide for civil actions to recover money received by reason of fraudulent conduct; ... to prohibit retaliation; to provide for certain civil fines; and to prescribe remedies and penalties." Michigan Medicaid False Claim Act 72 of 1977.

153.  Additionally, "[a]n employer shall not discharge, demote, suspend, threaten, harass, or in any other manner, discriminate against an employee in the terms and conditions of employment because the employee engaged in lawful acts, including initiating, assisting in, or participating in the

furtherance of an action under this act or because the employee cooperates with or assists in an investigation under this act." MCL § 400.610c.

154.   An employer who violates this section is liable to the employee for all of the following:

>   (a)  Reinstatement to the employee's position without loss of seniority;
>
>   (b)  Two times the amount of lost back pay;
>
>   (c)  Interest on the back pay;
>
>   (d)  Compensation for any special damages; and
>
>   (e)  Any other relief necessary to make the employee whole. MCL § 400.610c(2).

155.   As employees, Plaintiffs took lawful acts in furtherance of an action under the Michigan Medicaid FCA.

156.   Defendants acted in concert with one another and with others, specifically but not limited to various corporate officers both at Crothall/Compass and Tenet/VHS, by design and purposely so as to retaliate against Plaintiffs by intentionally, maliciously and with reckless disregard for the truth of information, they acted upon removing and terminating Plaintiffs.

157.   As a direct and proximate cause of Defendants' conduct, Plaintiffs have suffered damages including, loss of career opportunities and emotional

distress, including, but not limited to, embarrassment, humiliation and outrage.

Plaintiffs demand judgment against all of the Defendants jointly and severally, for actual, general, special, compensatory damages and further demands judgment against each of said Defendants, jointly and severally, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

158.    For all the foregoing reasons, Plaintiffs demand judgment against Defendants jointly and severally as follows:

**A.    LEGAL RELIEF**

a.    Economic, noneconomic and compensatory damages in whatever amount they are found to be entitled;

b.    Exemplary damages in whatever amount they are found to be entitled;

c.    Punitive damages in whatever amount they are found to be entitled;

d.    Statutory damages, and common law damages;

e.    Liquidated damages, treble damages, and double damages in whatever amount they are found to be entitled;

f.    An award of interest, costs and reasonable attorney fees;

g.    Plaintiff is entitled to compensatory, exemplary, punitive, and treble damages;

h.      Compensatory damages in whatever amount Plaintiffs are found to be entitled to.

i.      Judgment for lost wages, past and future, in whatever amount Plaintiffs are found to be entitled to;

j.      An award for the value of lost fringe and pension benefits, past and future;

11.     Mental Distress Damages;

12.     Emotional Distress Damages; and

13.     The damages available include compensation for psychological injuries such as humiliation, embarrassment, outrage, disappointment, and mental anguish that have resulted from the discrimination.

## B.     EQUITABLE RELIEF

1.      An order from this Court placing Plaintiffs in the position they would have been in had there been no wrongdoing by Defendants, including reinstatement with back pay;

2.      An injunction out of this Court prohibiting any further acts of wrongdoing by Defendants;

3.      An Order requiring Defendants to immediately produce Plaintiffs' personnel records;

4.      An award of interest, costs and reasonable attorney fees; and

5.      Whatever other equitable relief appears appropriate at the time of final judgment.

## <u>COUNT II</u>
## VIOLATION OF THE RETALIATION PROVISION OF THE
## FALSE CLAIMS ACT, 31 U.S.C. § 3730(h) (as to all Defendants)

159.   Plaintiffs repeat and re-allege each and every preceding paragraph as if fully set forth herein.

160.   The retaliation provision of the False Claims Act ("FCA") protects any employee, contractor or agent from being "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h)(l).

161.   On numerous occasions, Plaintiffs engaged in lawful acts, as set forth in more detail above, in an effort to stop 1 or more violations of the FCA, including but not limited to, 31 U.S.C. §§ 3729(a)(l)(B), 3729(a)(l)(G), 3729(a)(l)(A) and 3729(a)(l)(C), by the Defendants.

162.   The Government, unaware of the falsity of the records, statements and claims made or caused to be made by Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' illegal conduct.

163.    Defendants are contractors and subcontractors who benefit from Medicare payments.

164.    Defendant Tenet and its subsidiaries have tried to play ignorant about how the extreme cost-cutting measures have created unsafe environments at the DMC hospitals.

165.    Defendants acted in concert with one another and with others, specifically but not limited to various corporate officers both at Crothall/Compass and Tenet/VHS, by design and purposely so as to falsely and knowingly provided deficient and inadequate services by allowing outrageous unclean and unsanitary operating rooms, patient rooms to fester in blood pathogens, urine, broken equipment, and unsafe and other noncompliant conditions.

166.    Defendants worked together to withhold necessary supplies/equipment to sanitize the hospital because of their greed.

167.    Defendants have violated and fail to meet the requirements outlined by CMS for Certification of Participation.

168.    Defendants have known about the complaints of lack of supplies and unsanitary conditions and they falsely represent otherwise to CMS and government payors.

169.    As a direct and proximate cause of Defendants' conduct of improperly retaliating against, investigating and terminating Plaintiffs, they have suffered damages including, but not limited to, loss of their jobs and income, loss of career opportunities, emotional distress, including but not limited to, embarrassment, humiliation and outrage.

Plaintiffs demand judgment against all of the Defendants jointly and severally, for actual, general, special, compensatory damages and further demands judgment against each of said Defendants, jointly and severally, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

170.    For all the foregoing reasons, Plaintiffs demand judgment against Defendants jointly and severally as follows:

**A.    LEGAL RELIEF**

a.    Economic, noneconomic and compensatory damages in whatever amount they are found to be entitled;

b.    Exemplary damages in whatever amount they are found to be entitled;

c.    Punitive damages in whatever amount they are found to be entitled;

d.    Statutory damages, and common law damages;

e.    Liquidated damages, treble damages, and double damages in whatever amount they are found to be entitled;

f.    An award of interest, costs and reasonable attorney fees;

g.    Plaintiff is entitled to compensatory, exemplary, punitive, and treble damages;

h.    Compensatory damages in whatever amount Plaintiffs are found to be entitled to.

i.    Judgment for lost wages, past and future, in whatever amount Plaintiffs are found to be entitled to;

j.    An award for the value of lost fringe and pension benefits, past and future;

11.   Mental Distress Damages;

12.   Emotional Distress Damages; and

13.   The damages available include compensation for psychological injuries such as humiliation, embarrassment, outrage, disappointment, and mental anguish that have resulted from the discrimination.

## B.   EQUITABLE RELIEF

1.   An order from this Court placing Plaintiffs in the position they would have been in had there been no wrongdoing by Defendants, including reinstatement with back pay;

2.   An injunction out of this Court prohibiting any further acts of wrongdoing by Defendants;

3.   An Order requiring Defendants to immediately produce Plaintiffs' personnel records;

4.   An award of interest, costs and reasonable attorney fees; and

5.    Whatever other equitable relief appears appropriate at the time of final judgment.

### COUNT III

**VIOLATION OF THE BULLARD-PLAWECKI EMPLOYEE RIGHT TO KNOW ACT, MCL § 423.501, *et. seq.* (as to Defendants Compass and Crothall)**

171.  Plaintiffs repeat and re-allege each and every preceding paragraph as if fully set forth herein.

172.  At all times material hereto, Plaintiffs were employees and Defendants Crothall/Compass was an employer covered by and within the meaning of the Bullard-Plawecki Employee Right to Know Act, MCL § 423.501, *et. seq.*

173.  The primary purpose of the Bullard-Plawecki Employee Right to Know Act ("the Act") is to establish an employee's right to examine his personnel records, i.e. "the documents that are being kept by the employer concerning that employee."

174.  Per the Act, "Employer" means an individual, corporation, partnership, labor organization, unincorporated association, the state, or an agency or a political subdivision of the state, or any other legal, business, or commercial entity which has 4 or more employees and includes an agent of the employer. MCL § 423.501(2)(b).

175.    Per the Act, "Personnel record" means a record kept by the employer that identifies the employee to the extent that the record is used or has been used, or may affect or be used relative to that employee's qualifications for employment, promotion, transfer, additional compensation, or disciplinary action. MCL § 423.501(2)(c).

176.    Plaintiffs  repeatedly requested, but were denied by Defendants, access to a complete copy of their employment records.

177.    To date, Defendants and its employees continue to willfully fail and/or refuse to comply with the Act and Plaintiffs' demands for a complete copy of their personnel record(s), including the "internal report."

178.    Specifically, Defendants, while refusing to provide Plaintiffs with a copy of the "internal report" or their personnel record(s), have casted Plaintiffs in a negative light through its statements - those made publicly and the union - regarding the cause for Plaintiffs' termination, including that Defendants relied on an "internal report" for said termination.

179.    Defendants' intentional noncompliance with the Act threatens grave and irreparable harm to Plaintiffs' reputation, future employment opportunities and their legal rights.

Plaintiffs demand judgment against all of the Defendants jointly and severally, for actual, general, special, compensatory damages and further demands judgment

against each of said Defendants, jointly and severally, plus the costs of this action,

including attorney's fees, and such other relief deemed to be just and equitable.

180.     For all the foregoing reasons, Plaintiffs demand judgment against

Defendants jointly and severally as follows:

### A.     LEGAL RELIEF

a.     Economic, noneconomic and compensatory damages in whatever amount they are found to be entitled;

b.     Exemplary damages in whatever amount they are found to be entitled;

c.     Punitive damages in whatever amount they are found to be entitled;

d.     Statutory damages, and common law damages;

e.     Liquidated damages, treble damages, and double damages in whatever amount they are found to be entitled;

f.     An award of interest, costs and reasonable attorney fees;

g.     Plaintiff is entitled to compensatory, exemplary, punitive, and treble damages;

h.     Compensatory damages in whatever amount Plaintiffs are found to be entitled to.

i.     Judgment for lost wages, past and future, in whatever amount Plaintiffs are found to be entitled to;

j.     An award for the value of lost fringe and pension benefits, past and future;

11.   Mental Distress Damages;

12.   Emotional Distress Damages; and

13.   The damages available include compensation for psychological injuries such as humiliation, embarrassment, outrage, disappointment, and mental anguish that have resulted from the discrimination.

## B.   EQUITABLE RELIEF

1.   An order from this Court placing Plaintiffs in the position they would have been in had there been no wrongdoing by Defendants, including reinstatement with back pay;

2.   An injunction out of this Court prohibiting any further acts of wrongdoing by Defendants;

3.   An Order requiring Defendants to immediately produce Plaintiffs' personnel records;

4.   An award of interest, costs and reasonable attorney fees; and

5.   Whatever other equitable relief appears appropriate at the time of final judgment.

## <u>COUNT IV</u>
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (as to all Defendants)

181.   Plaintiffs repeat and re-allege each and every preceding paragraph as if fully set forth herein.

182.   Defendants' conduct, as set forth above, was extreme and outrageous and went beyond the bounds of decency.

183.   Defendants' intentional/reckless conduct in failing to provide supplies for housekeepers to properly sanitize patient and operating rooms in order to help Defendants' bottom line.

184.   The lack of supplies to properly sanitize the hospital has been going on pre-pandemic, during the pandemic, and post-pandemic.

185.   In order to help Tenet's bottom line, Defendants Crothall/Compass intentionally and/or recklessly failed to initiate emergency protocols in response to the COVID-19 epidemic jeopardizing Plaintiffs' health and safety, and the safety of employees and patients.

186.   Defendants intentionally/and or recklessly made decisions that severely undermined staffing and protective measures at the hospital so that Plaintiffs and other employees could not adequately sanitize the hospital.

187.   Defendants make significant profits and intentionally refused to spend adequate funds to buy supplies and equipment to keep the hospitals safe and sanitary as required by regulations, standards, and laws.

188.   In engaging in the offensive conduct set forth herein, Defendants intended to cause emotional injury to Plaintiffs and/or recklessly disregarded the probability that these unnecessary dangerous conditions and unsafe

circumstances would result in Plaintiffs' severe emotional harm. Plaintiffs endured years of stress and anxiety from retaliation and from knowing that patients are put in harm's way.

189. As a result of Defendants' decisions, Plaintiffs suffered severe trauma during every shift as they helplessly watched patients who were very ill, or about to deliver babies, who were exposed to unsanitary conditions because Defendants refused to provide enough cleaning supplies and equipment to keep the hospital sanitary.

190. Defendants acted with reckless disregard for the extreme conditions it placed on Plaintiffs.

191. Defendants' above-referenced conduct was extremely reckless and went beyond all possible bounds of decency.

192. Defendants belittled, humiliated, and falsely accused Plaintiffs of not doing their jobs in an attempt to discredit them because they would report safety concerns to Defendants.

193. The above-referenced conduct described did in fact cause Plaintiffs to suffer damages, including but not limited to severe emotional distress.

194. For all the foregoing reasons, Plaintiffs demand judgment against Defendants jointly and severally as follows:

### A.    LEGAL RELIEF

a.    Economic, noneconomic and compensatory damages in whatever amount they are found to be entitled;

b.    Exemplary damages in whatever amount they are found to be entitled;

c.    Punitive damages in whatever amount they are found to be entitled;

d.    Statutory damages, and common law damages;

e.    Liquidated damages, treble damages, and double damages in whatever amount they are found to be entitled;

f.    An award of interest, costs and reasonable attorney fees;

g.    Plaintiff is entitled to compensatory, exemplary, punitive, and treble damages;

h.    Compensatory damages in whatever amount Plaintiffs are found to be entitled to.

i.    Judgment for lost wages, past and future, in whatever amount Plaintiffs are found to be entitled to;

j.    An award for the value of lost fringe and pension benefits, past and future;

11.    Mental Distress Damages;

12.    Emotional Distress Damages; and

13.    The damages available include compensation for psychological injuries such as humiliation,

embarrassment, outrage, disappointment, and mental anguish that have resulted from the discrimination.

**B.     EQUITABLE RELIEF**

1.     An order from this Court placing Plaintiffs in the position they would have been in had there been no wrongdoing by Defendants, including reinstatement with back pay;

2.     An injunction out of this Court prohibiting any further acts of wrongdoing by Defendants;

3.     An Order requiring Defendants to immediately produce Plaintiffs' personnel records;

4.     An award of interest, costs and reasonable attorney fees; and

5.     Whatever other equitable relief appears appropriate at the time of final judgment.

<u>**COUNT V**</u>
**CONSPIRACY (as to all Defendants)**

195.   Plaintiffs repeat and re-allege each and every preceding paragraph as if fully set forth herein.

196.   At all material times, Defendant Tenet was the ultimate decision maker for purposes of conduct involving the Covid-19 pandemic, and cost cutting of essential supplies and equipment.

197.  Defendant Tenet got rid of Sodexo and brought in Defendants Crothall/Compass to implement unreasonable cost cutting measures which created an unsafe hospital environment.

198.  Defendants acted in concert with one another and with others, specifically but not limited to various corporate officers both at Crothall/Compass and Tenet/VHS, by design and purposely so as to maintain understaffed and extremely dangerous conditions, such as Plaintiffs, who are frontliner workers and were overwhelmed by safety violations and lack of adequate supplies.

199.  Defendants acted in concert with one another and with others, specifically but not limited to various corporate officers both at Crothall/Compass and Tenet/VHS, by design and purposely so as to maintain understaffed and extremely dangerous conditions, such as Plaintiffs, who are frontliner workers and were unnecessary exposed to Covid-19 areas in the hospital, which were not properly marked per the rules. Plaintiffs, during critical times, were not provided with PPE to protect themselves.

200.  Defendants acted in concert with one another and with others, specifically but not limited to various corporate officers both at  Crothall/Compass and Tenet/VHS, by design and purposely so as to maintain understaffed and extremely dangerous conditions, such as Plaintiffs, who are frontliner

workers and were exposed to employees and managers who were instructed to come to work even though they had Covid-19 symptoms.

201.   Defendants acted in concert with one another and with others, specifically but not limited to various corporate officers both at Crothall/Compass and Tenet/VHS, by design and purposely so as to undermine Plaintiffs' ethical duties and policy rules.

202.   Defendants acted in concert with one another and with others, specifically but not limited to various corporate officers both at Crothall/Compass and Tenet/VHS, by design and purposely so as to save money even if it meant compromising safety.

203.   Defendants acted in concert with one another and with others, specifically but not limited to various corporate officers both at Crothall/Compass and Tenet/VHS, by design and purposely deceived inspectors from OSHA, JHACO, CMS, AND LARA.

204.   Each of the acts committed by all the Defendants constituted aid and encouragement to all other Defendants herein in the commission of the wrongful acts described herein.

205.   These tortious and wrongful acts of Defendants, along with others, constituted a conspiracy to cause injury to Plaintiffs, specifically but not limited to emotional injuries as state above.

206.    The aforementioned conspiracy was committed pursuant to a common plan to commit the tortious and wrongful acts described herein.

207.    The aforementioned conspiracy was also undertaken without any fault or wrongdoing by Plaintiffs herein.

208.    As a direct and proximate result of Plaintiffs' refusal to breach the public policy of the State of Michigan and reporting the breaches to Defendants' upper management and as a result of Defendants' retaliatory discharge of Plaintiffs, Plaintiffs have been placed in financial distress; have suffered loss of wages and benefits, loss of earning capacity, and loss of ability to work; and will continue to suffer these losses in the future.

209.    For all the foregoing reasons, Plaintiffs demand judgment against Defendants jointly and severally as follows:

**A.    LEGAL RELIEF**

    a.    Economic, noneconomic and compensatory damages in whatever amount they are found to be entitled;

    b.    Exemplary damages in whatever amount they are found to be entitled;

    c.    Punitive damages in whatever amount they are found to be entitled;

    d.    Statutory damages, and common law damages;

e.     Liquidated damages, treble damages, and double damages in whatever amount they are found to be entitled;

f.     An award of interest, costs and reasonable attorney fees;

g.     Plaintiff is entitled to compensatory, exemplary, punitive, and treble damages;

h.     Compensatory damages in whatever amount Plaintiffs are found to be entitled to.

i.     Judgment for lost wages, past and future, in whatever amount Plaintiffs are found to be entitled to;

j.     An award for the value of lost fringe and pension benefits, past and future;

11.    Mental Distress Damages;

12.    Emotional Distress Damages; and

13.    The damages available include compensation for psychological injuries such as humiliation, embarrassment, outrage, disappointment, and mental anguish that have resulted from the discrimination.

## B.   EQUITABLE RELIEF

1.     An order from this Court placing Plaintiffs in the position they would have been in had there been no wrongdoing by Defendants, including reinstatement with back pay;

2.     An injunction out of this Court prohibiting any further acts of wrongdoing by Defendants;

3.   An Order requiring Defendants to immediately produce Plaintiffs' personnel records;

4.   An award of interest, costs and reasonable attorney fees; and

5.   Whatever other equitable relief appears appropriate at the time of final judgment.

**COUNT VI**
**MICHIGAN PUBLIC POLICY WRONGFUL DISCHARGE CLAIM**
**(as to Defendants Crothall & Compass)**

210.   Plaintiffs repeat and re-allege each and every preceding paragraph as if fully set forth herein.

211.   Pursuant to Michigan law pertaining to public policy exceptions to an employee's at-will employment status, or other status, an employer cannot discharge and/or take adverse employment action(s) against an employee for the following reasons:

i. Where explicit legislative statements prohibit the discharge, or other adverse treatment of employees; and/or ii. Where the reason for the discharge was the employee's exercise of a right conferred by well-established legislative enactment.

212.   At all times material and relevant, Plaintiffs were employees and Defendants Crothall and Compass were employers.

58

213.     The Joint Commission on Accreditation of Healthcare Organizations (JCAHO) maintains non-retaliation provisions, which prohibit adverse employment decisions based on an employee's good faith reporting of a concern about compliance with policy or legal requirements, including but not limited to employee and patient safety and staffing.

214.     Michigan OSHA's  general duty clause requires employers to provide employees with "employment and a place of employment that is free from recognized hazards that are causing, or are likely to cause, death or serious physical harm to employees." OSHA prohibits retaliation against employees who report safety hazards.

215.     MCL 333.20176a prohibits an employer from retaliating against an employee who reports malpractice and/or patient neglect or unsafe patient conditions.

216.     Plaintiffs engaged in internal and external complaints, which encompassed patient and employee wellbeing and safety, as well as Defendants' patent neglect to patients and employees at Harper Hutzel Hospital.

217.     Defendants, through their agents, servants, or employees, violated the public policy of the State of Michigan as outlined above.

218.   Plaintiffs refused to violate these policies and reported the actions of certain agents, servants, or employees of Defendants to Defendants' upper management.

219.   Defendants Crothall and Compass discharged Plaintiffs in whole or in part for refusing or failing to violate the public policy of the State of Michigan, outlined above, and for reporting the actions of the agents, servants, or employees of Defendants to Defendants' upper management at Crothall and Compass, including Defendant Tenet.

220.   As a direct and proximate result of Plaintiffs' refusal to breach the public policy of the State of Michigan and reporting the breaches to Defendants' upper management and as a result of Defendants' retaliatory discharge of Plaintiffs, Plaintiffs have been placed in financial distress; have suffered loss of wages and benefits, loss of earning capacity, and loss of ability to work; and will continue to suffer these losses in the future.

221.   For all the foregoing reasons, Plaintiffs demand judgment against Defendants jointly and severally as follows:

   **A.   LEGAL RELIEF**
      a.   Economic, noneconomic and compensatory damages in whatever amount they are found to be entitled;

      b.   Exemplary damages in whatever amount they are found to be entitled;

c.     Punitive damages in whatever amount they are found to be entitled;

d.     Statutory damages, and common law damages;

e.     Liquidated damages, treble damages, and double damages in whatever amount they are found to be entitled;

f.     An award of interest, costs and reasonable attorney fees;

g.     Plaintiff is entitled to compensatory, exemplary, punitive, and treble damages;

h.     Compensatory damages in whatever amount Plaintiffs are found to be entitled to.

i.     Judgment for lost wages, past and future, in whatever amount Plaintiffs are found to be entitled to;

j.     An award for the value of lost fringe and pension benefits, past and future;

11.     Mental Distress Damages;

12.     Emotional Distress Damages; and

13.     The damages available include compensation for psychological injuries such as humiliation, embarrassment, outrage, disappointment, and mental anguish that have resulted from the discrimination.

## B.     EQUITABLE RELIEF

1.     An order from this Court placing Plaintiffs in the position they would have been in had there been no

wrongdoing by Defendants, including reinstatement with back pay;

2.  An injunction out of this Court prohibiting any further acts of wrongdoing by Defendants;

3.  An Order requiring Defendants to immediately produce Plaintiffs' personnel records;

4.  An award of interest, costs and reasonable attorney fees; and

5.  Whatever other equitable relief appears appropriate at the time of final judgment.

## COUNT VII
## WHISTLEBLOWER (as to Defendants Crothall & Compass)

222.  Plaintiffs repeat and re-allege each and every preceding paragraph as if fully set forth herein.

223.  At all material times, Plaintiffs were employees, and Defendants Crothall and Compass were their employers, covered by and within the meaning of the Whistleblowers' Protection Act, MCL 15.361 et seq.

224.  Pursuant to Michigan Administrative Code Rule 325.3825 (1), " [a] facility shall be planned, staffed, equipped, and operated with the individual patient's welfare and safety to be of paramount concern."

225.    Furthermore, there are various other state and federal regulations enforced by LARA, CMS, OSHA, Medicare, and Medicaid, intended to assure safe and healthy working conditions for workers, visitors, and patients.

226.    Likewise, pursuant to the Michigan Patient Bill of Rights, which has been statutorily enumerated, a "patient or resident is entitled to receive adequate and appropriate care." MCL 333.20201 (1)(e).

227.    Defendants violated the Whistleblowers' Protection Act when they discriminated against Plaintiffs as described regarding the terms, benefits, conditions, and privileges of their employment because Plaintiffs reported a violation or suspected violation of a law, regulation, or rule of the State of Michigan and opposed practices made illegal by the laws, regulations, or rules of the State of Michigan.

228.    The actions of Defendants were intentional.

229.    As a direct and proximate result of Defendants' unlawful actions against Plaintiffs as described, Plaintiffs have sustained injuries and damages, including, but not limited to, loss of earnings; loss of career opportunities; mental and emotional distress; loss of reputation and esteem in the community; and loss of the ordinary pleasures of everyday life, including the opportunity to pursue gainful occupation of choice.

230.    For all the foregoing reasons, Plaintiffs demand judgment against

Defendants jointly and severally as follows:

**A.    LEGAL RELIEF**

    a.    Economic, noneconomic and compensatory damages in whatever amount they are found to be entitled;

    b.    Exemplary damages in whatever amount they are found to be entitled;

    c.    Punitive damages in whatever amount they are found to be entitled;

    d.    Statutory damages, and common law damages;

    e.    Liquidated damages, treble damages, and double damages in whatever amount they are found to be entitled;

    f.    An award of interest, costs and reasonable attorney fees;

    g.    Plaintiff is entitled to compensatory, exemplary, punitive, and treble damages;

    h.    Compensatory damages in whatever amount Plaintiffs are found to be entitled to.

    i.    Judgment for lost wages, past and future, in whatever amount Plaintiffs are found to be entitled to;

    j.    An award for the value of lost fringe and pension benefits, past and future;

    11.    Mental Distress Damages;

    12.    Emotional Distress Damages; and

13.     The damages available include compensation for psychological injuries such as humiliation, embarrassment, outrage, disappointment, and mental anguish that have resulted from the discrimination.

**B.      EQUITABLE RELIEF**

1.      An order from this Court placing Plaintiffs in the position they would have been in had there been no wrongdoing by Defendants, including reinstatement with back pay;

2.      An injunction out of this Court prohibiting any further acts of wrongdoing by Defendants;

3.      An Order requiring Defendants to immediately produce Plaintiffs' personnel records;

4.      An award of interest, costs and reasonable attorney fees; and

5.      Whatever other equitable relief appears appropriate at the time of final judgment.

## COUNT VIII
## VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT (ELCRA), MCL 37.2101, ET. SEQ. (as to Defendants Crothall and Compass)

231.   Plaintiffs repeat and re-allege each and every preceding paragraph as if fully set forth herein.

232.   The Elliott-Larsen Civil Rights Act (ELCRA**),** MCL 37.2101 et. seq., prohibits discrimination in employment, public accommodations,

educational institutions, and housing on the basis of race, sex, age, religion, national origin, height, weight, or marital status.

233.    Plaintiff were engaged in a protected activity – notifying Defendants of the unsanitary conditions at the hospital, complaints to OSHA, etc.

234.    Plaintiffs' complaints and concerns were known to Defendants.

235.    Defendant Crothall/Compass fired Plaintiffs as a result of their complaints as to the unsanitary and unsafe conditions at Harper Hospital.

236.    Defendants' (Crothall/Compass) management made it clear to Plaintiffs that they are housekeepers and not worthy of having a voice and that they are lucky to have jobs instead of being on Medicaid.

237.    Plaintiffs are African American and females who have been subject to retaliation and discrimination because Defendants believed they could get away with such retaliation and discrimination.

238.    Plaintiffs were unfairly disciplined.

239.    Defendants   Crothall/Compass   violate   their   own   policies   of antidiscrimination and take advantage of Plaintiffs because they are African American  and females.

240.    Defendants  Crothall/Compass  refused  to  train  Plaintiffs  and  other employees because of their discriminatory belief that Plaintiffs, among

others, are stupid and routinely talked down to Plaintiffs and one factor is because of their gender and race.

241. Defendants Crothall/Compass discriminated against Plaintiffs and refused to provide proper PPE because they treated Plaintiffs as less human than their managers because of their gender and race.

242. Defendants Crothall/Compass retaliated and discriminated against Plaintiffs because they spoke up about how Defendants Crothall/Compass mistreated and terminated a disabled employee who was disabled due to getting Covid-19 at work.

243. Plaintiffs suffered damages as a result of Defendants' violations of their rights under ELCRA.

244. For all the foregoing reasons, Plaintiffs demand judgment against Defendants jointly and severally as follows:

**A.    LEGAL RELIEF**

   a.   Economic, noneconomic and compensatory damages in whatever amount they are found to be entitled;

   b.   Exemplary damages in whatever amount they are found to be entitled;

   c.   Punitive damages in whatever amount they are found to be entitled;

   d.   Statutory damages, and common law damages;

e.   Liquidated damages, treble damages, and double damages in whatever amount they are found to be entitled;

f.   An award of interest, costs and reasonable attorney fees;

g.   Plaintiff is entitled to compensatory, exemplary, punitive, and treble damages;

h.   Compensatory damages in whatever amount Plaintiffs are found to be entitled to.

i.   Judgment for lost wages, past and future, in whatever amount Plaintiffs are found to be entitled to;

j.   An award for the value of lost fringe and pension benefits, past and future;

11.   Mental Distress Damages;

12.   Emotional Distress Damages; and

13.   The damages available include compensation for psychological injuries such as humiliation, embarrassment, outrage, disappointment, and mental anguish that have resulted from the discrimination.

## B.   EQUITABLE RELIEF

1.   An order from this Court placing Plaintiffs in the position they would have been in had there been no wrongdoing by Defendants, including reinstatement with back pay;

2.   An injunction out of this Court prohibiting any further acts of wrongdoing by Defendants;

3.      An Order requiring Defendants to immediately produce Plaintiffs' personnel records;

4.      An award of interest, costs and reasonable attorney fees; and

5.      Whatever other equitable relief appears appropriate at the time of final judgment.

## RELIEF REQUESTED

245.   Plaintiffs repeat and re-allege each and every preceding paragraph as if fully set forth herein. As a direct and proximate result of Defendants' violations as stated above, Plaintiffs have suffered depression, emotional and physical distress, mental and physical anguish, humiliation, loss of reputation and embarrassment, and the physical manifestations of these injuries and will continue to suffer these problems in the future.

246.   Plaintiffs demand judgment against all of the Defendants jointly and severally, for actual, general, special, compensatory damages and further demands judgment against each of said Defendants, jointly and severally.

For all the foregoing reasons, Plaintiffs demand judgment against Defendants as follows:

**A.      LEGAL RELIEF**

a.      Economic, noneconomic and compensatory damages in whatever amount they are found to be entitled;

b.  Exemplary damages in whatever amount they are found to be entitled;

c.  Punitive damages in whatever amount they are found to be entitled;

d.  Statutory damages, and common law damages;

e.  Liquidated damages, treble damages, and double damages in whatever amount they are found to be entitled;

f.  An award of interest, costs and reasonable attorney fees;

g.  Plaintiff is entitled to compensatory, exemplary, punitive, and treble damages;

h.  Compensatory damages in whatever amount Plaintiffs are found to be entitled to.

i.  Judgment for lost wages, past and future, in whatever amount Plaintiffs are found to be entitled to;

j.  An award for the value of lost fringe and pension benefits, past and future;

11.  Mental Distress Damages;

12.  Emotional Distress Damages; and

13.  The damages available include compensation for psychological injuries such as humiliation, embarrassment, outrage, disappointment, and mental anguish that have resulted from the discrimination.

**B.     EQUITABLE RELIEF**

1.     An order from this Court placing Plaintiffs in the position they would have been in had there been no wrongdoing by Defendants, including reinstatement with back pay;

2.     An injunction out of this Court prohibiting any further acts of wrongdoing by Defendants;

3.     An Order requiring Defendants to immediately produce Plaintiffs' personnel records;

4.     An award of interest, costs and reasonable attorney fees; and

5.     Whatever other equitable relief appears appropriate at the time of final judgment.

## <u>COUNT IX</u>
## NEGLIGENCE CLAIM BY PLAINTIFF RHODES
### (as to Defendants Tenet, VHS of Michigan, and VHS Harper Hutzel)

247.   Plaintiffs repeat and re-allege each and every preceding paragraph as if fully set forth herein.

248.   Defendants owed a duty to Plaintiff Rhodes to follow safety rules designed for her protection.

249.   Defendants breached their duty when they failed to follow safety rules and failed to notify Plaintiff Rhodes when patient rooms had patients positive with the coroner virus.

250.    Plaintiff Rhodes contracted the corona virus as a result of Defendants negligence.

251.    This is during the time when no vaccines were available for front line workers.

252.    Defendants' negligence is the proximate cause of Plaintiff Rhodes health injuries, and damages.

## RELIEF REQUESTED

253.   Plaintiffs repeat and re-allege each and every preceding paragraph as if fully set forth herein. As a direct and proximate result of Defendants' violations as stated above, Plaintiffs have suffered depression, emotional and physical distress, mental and physical anguish, humiliation, physical injuries, loss of reputation and embarrassment, and the physical manifestations of these injuries and will continue to suffer these problems in the future.

254.   Plaintiffs demand judgment against all of the Defendants jointly and severally, for actual, general, special, compensatory damages and further demands judgment against each of said Defendants, jointly and severally.

For all the foregoing reasons, Plaintiffs demand judgment against Defendants as follows:

   **C.    LEGAL RELIEF**
      a.    Economic, noneconomic and compensatory damages in whatever amount they are found to be entitled;

b.  Exemplary damages in whatever amount they are found to be entitled;

c.  Punitive damages in whatever amount they are found to be entitled;

d.  Statutory damages, and common law damages;

e.  Liquidated damages, treble damages, and double damages in whatever amount they are found to be entitled;

f.  An award of interest, costs and reasonable attorney fees;

g.  Plaintiff is entitled to compensatory, exemplary, punitive, and treble damages;

h.  Compensatory damages in whatever amount Plaintiffs are found to be entitled to.

i.  Judgment for lost wages, past and future, in whatever amount Plaintiffs are found to be entitled to;

j.  An award for the value of lost fringe and pension benefits, past and future;

11.  Mental Distress Damages;

12.  Emotional Distress Damages; and

13.  The damages available include compensation for psychological injuries such as humiliation, embarrassment, outrage, disappointment, and mental anguish that have resulted from the discrimination.

### D.     EQUITABLE RELIEF

1.     An order from this Court placing Plaintiffs in the position they would have been in had there been no wrongdoing by Defendants, including reinstatement with back pay;

2.     An injunction out of this Court prohibiting any further acts of wrongdoing by Defendants;

3.     An Order requiring Defendants to immediately produce Plaintiffs' personnel records;

4.     An award of interest, costs and reasonable attorney fees; and

5.     Whatever other equitable relief appears appropriate at the time of final judgment.

Dated: June 6, 2023                    Respectfully submitted,

/s/ Azzam Elder
Azzam Elder (P53661)
Elder Brinkman Law
Counsel for Plaintiffs
1360 Porter St., Suite 250
Dearborn, MI 48124
(313) 879-0355
 800-MyLawFirm
aelder@elderbrinkmanlaw.com

/s/ Nina Korkis Taweel
Nina Korkis Taweel (P63031)
Korkis Law Firm, PLLC
Co-Counsel for Plaintiffs
1360 Porter St., Suite 200

Dearborn, MI 48124
313-581-5800
nina@korkislaw.com

## <u>RELIANCE ON JURY DEMAND</u>

Plaintiffs, by and through their attorneys, rely on the jury demand in their original Complaint and demand a trial by jury of all the issues in this cause.

Dated: June 6, 2023                    Respectfully submitted,

/s/ *Azzam Elder*
Azzam Elder (P53661)
Elder Brinkman Law
Counsel for Plaintiffs
1360 Porter St., Suite 250
Dearborn, MI 48124
(313) 879-0355
 800-MyLawFirm
aelder@elderbrinkmanlaw.com

/s/ *Nina Korkis Taweel*
Nina Korkis Taweel (P63031)
Korkis Law Firm, PLLC
Co-Counsel for Plaintiffs
1360 Porter St., Suite 200
Dearborn, MI 48124
313-581-5800
nina@korkislaw.com

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 6 2023, I electronically filed the foregoing **Plaintiffs' Third Amended Complaint and Jury Demand** with the Clerk of the Court using the ECF.

/s/ *Nina Korkis Taweel*
Nina Korkis Taweel (P63031)