UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENISE BONDS and SHENESIA
RHODES,
                             Plaintiffs,

v.

COMPASS GROUP, *et al.*,
                           Defendants.
_____/

Case No. 22-11491

F. Kay Behm
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

## ORDER ON MOTIONS RE: DEPOSITIONS (ECF Nos. 93-97)

Before the Court are the parties' disputes about depositions.  Plaintiffs move to compel fact depositions of high-ranking officials from Defendants Tenet Healthcare Corporation, VHS of Michigan, Inc., and VHS Haper-Hutzel Hospital, Inc. ("DMC Defendants") (ECF No. 93) and DMC Defendants' and Defendants Compass Group and Crothall Healthcare, Inc.'s ("Crothall/Compass") Rule 30(b)(6) corporate depositions (ECF No. 94).  In response, the Defendants moved for protective orders (ECF Nos. 95-97).

A.    Governing Standards

"Parties may obtain discovery related to any nonprivileged matter relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information within this scope of discovery need not be admissible in evidence to be discoverable. *Id.* "Although a [party] should not be denied access to information necessary to establish her claim, neither may a [party] be permitted to 'go fishing,' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 320-21 (6th Cir. 2015) (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. Fed. R. Civ. P. 37.

Federal Rule of Civil Procedure 26(c) allows the Court to issue protective orders for good cause shown to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including that the disclosure or discovery not be had, or that the disclosure or discovery be limited to certain matters. Fed. R. Civ. P. 26(c). The party seeking a protective order has the burden of showing that good cause exists for the order. *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001). To show good cause, the movant must articulate specific facts showing "clearly defined and serious injury resulting from the discovery sought and cannot rely on conclusory statements." *Id.* (citations and

2

internal quotation marks omitted).  This showing must be made even when considering the deposition of a high-ranking, "apex" official.  *See Serrano v. Cintas Corp*., 699 F.3d 884, 901 (6th Cir. 2012) ("Even in cases where we have considered extensively a corporate officer's knowledge and, thus, capacity to provide information relevant to the case, we have declined to credit a [corporate officer's] bald assertion that being deposed would present a substantial burden, and still required the corporate officer to meet Rule 26(c)(1)'s requirements.") (quotation omitted).  "[I]n this Circuit, depositions of high-level executives are addressed the same as any other potential witness: by examining relevance, proportionality, and (where a protective order is sought), whether there are specific facts showing that the deposition would lead to a clearly defined and serious injury." *Eight Mile Style, LLC v. Spotify USA Inc*., 2022 WL 20936608, at *6 (M.D. Tenn. Mar. 31, 2022) (citing *id*.).

    B.    <u>DMC Defendants' High-Ranking Officials (ECF Nos. 93, 97)</u>

Plaintiffs want to depose Tenet Healthcare Corporation's CEO, Mr. Sutaria; DMC's former CEO, Ms. Gregory; and DMC's current CEO, Dr. Lavis, to inquire into their involvement in Plaintiffs' complaints and their termination for no more than four hours each.

Defendants argue that the CEOs have no unique relevant personal knowledge.  What follows describes the extent of their knowledge.  Plaintiff

3

Rhodes emailed Sutaria directly with her safety and sanitation concerns. According to Plaintiffs, Sutaria forwarded the concerns to his staff "pressuring" them to make the complaints Crothall's problem, and knowingly allowed his staff to forward the complaints to Plaintiffs' employers in violation of policy. (ECF No. 93, PageID.2852). Defendant Tenet Healthcare's Chief Compliance Officer, Mr. Sagratilo, recently testified that Sutaria told him not to interview the Plaintiffs about their complaints, despite policy requiring a complete investigation. (ECF No. 105, PageID.3438). This shows, according to Plaintiffs, that Sutaria participated in the investigation in that he directed that Plaintiffs not be interviewed. (*Id.* at PageID.3439).

Plaintiffs' union vice president emailed Ms. Gregory with video corroborating Plaintiffs' complaints and concerns about safety and cleaning supplies. Gregory acknowledged that this was a serious issue and represented that she would fix it, but nothing happened. (ECF No. 93, PageID.2853). Gregory was CEO from January 2020 to October 2021, before Plaintiffs' termination. (ECF No. 97, PageID.3175). Plaintiffs insist that Gregory's testimony is essential because it would provide "Plaintiffs the right to discovery and the opportunity to prove that they were telling the truth about the horrific safety conditions at the hospital" and that Gregory ignored the concerns. (ECF No. 105, PageID.3441).

Dr. Lavis took over as CEO after Ms. Gregory.  She was purportedly involved in investigations, received emails from Plaintiffs, and was part of the leadership group that terminated Plaintiffs.  (ECF No. 93, PageID.2853).  There are no record citations or exhibits to support this assertion.  (ECF No. 105, PageID.3447).  Tenet's Chief Compliance Officer had follow-up conversations with Dr. Lavis about the safety concerns and how to investigate them with CEO Sutaria.  (ECF No. 105, PageID.3440).

Tenet/DMC policy mandates that safety concerns be raised to the CEO of the hospital and of Tenet; Plaintiffs took their concerns to the CEOs.  Plaintiffs argue that these three individuals have relevant evidence not readily obtainable from other sources.  (ECF No. 105, PageID.3447).

DMC Defendants oppose these "apex" depositions.  They note that DMC Defendants, and the CEOs by extension, have no employment relationship with the Plaintiffs.  They insist they have no unique personal knowledge of relevant facts.  To show the limited use of their testimony, they note that Plaintiff Rhodes emailed Sutaria and Dr. Lavis on May 26, 2022, when Plaintiff Bonds had been terminated and Rhodes was on her final suspension.  And Gregory was not employed there when Plaintiffs were terminated.  (ECF No. 97, PageID.3170).  They argue that the emails obtained thus far show that other individuals have more information than these persons.  (*Id.* at PageID.3181).  Finally, they insist that there are less

burdensome ways of getting testimony about what DMC Defendants did or did not do in relation to their complaints, for instance by deposing other DMC officials who were directly involved in investigating Plaintiffs' complaints.  (ECF No. 106, PageID.3460-61).

Defendants' insistence that the CEOs have a "complete lack of any personal knowledge of facts relevant to Plaintiffs' claims," (ECF No. 97, PageID.3181), is contradicted by the emails and their positions as ultimate decisionmakers.  They each had at least some knowledge of the safety concerns Plaintiffs raised.  And Plaintiffs have shown that the CEOs were not simply made aware of the concerns, but they also communicated with other employees about the concerns.  Plaintiffs sue DMC Defendants for failing to provide a safe working environment, so what the CEOs knew and did or did not do is relevant to their claims.

To defeat the deposition notices, Defendants needed to show some clearly defined and specific harm the CEOs would suffer if made to sit for a deposition. *See Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012) ("Even in cases where we have considered extensively a corporate officer's knowledge and, thus, capacity to provide information relevant to the case, we have declined to credit a [corporate officer's] bald assertion that being deposed would present a substantial burden, and still required the corporate officer to meet Rule 26(c)(1)'s requirements.") (quotation omitted).  They have not met their burden.  Among

other cases, Defendants cite *Davis v. SIG Sauer, Inc.*, 2023 WL 3292869 (E.D. Ky. May 5, 2023). There, the plaintiff wanted to depose the defendant's CEO, but the defendant argued that the discovery could be obtained from other sources that are less burdensome and that the CEO had no unique personal knowledge about the issues. *Id.* at *2. The defendant wanted the plaintiff to depose other lower-level employees or conduct a Rule 30(b)(6) deposition. The court agreed with the defendant, but not just because the defendant was a CEO. It was because the CEO had "no unique personal knowledge" about the issue and other employees were better situated to provide the discovery. *Id.* at *3. DMC Defendants liken this case to *Davis*, but that analogy misses the mark considering that the CEOs have some personal unique personal knowledge that goes somewhat further than reading an email from the Plaintiffs or their union representative. The CEOs had further involvement, albeit likely minimal, in directing how the safety concerns would be handled and, according to Plaintiffs, they bore some of the responsibility for ensuring a safe hospital environment. For that reason, their depositions are compelled.

The motion to compel is **GRANTED IN PART**. Because it does not appear that the CEOs have extensive personal knowledge relevant to the claims, the Court will limit each deposition to **two hours** maximum of Plaintiffs' counsel's questioning. Questions can only concern the remaining claims. Plaintiffs do not

sue DMC Defendants for, for example, inappropriately forwarding a confidential email.  There is no retaliation claim against DMC Defendants.  At paragraph 204 of the amended complaint, Plaintiffs allege that each act by the defendants was aid and encouragement to the other defendants "in the commission of the wrongful acts described herein."  (ECF No. 50, PageID.1636).  But breaking purported confidentiality of complaints is not discussed in the complaint.  So Mr. Sutaria's alleged inappropriate handling of Ms. Rhodes' email is irrelevant.  These depositions need to be completed **on or before November 22, 2024**.  The parties should confer about conducting the depositions remotely.  The motion for protective order is **DENIED**.

### C.   Corporate Representative Depositions (ECF Nos. 94-96)

Plaintiffs seek an order compelling Crothall/Compass and DMC Defendants to produce their corporate representatives for Rule 30(b)(6) deposition.  Plaintiffs first served notices of the depositions during March 2024.  Defendants objected that the notices were overly broad.  Plaintiffs served new notices in September 2024.

#### 1.   Crothall/Compass Defendants

Crothall/Compass Defendants argue that the notice was untimely and does not meet Rule 30(b)(6)'s particularity requirement, and that the deposition would be cumulative and duplicative of prior discovery and depositions.  (ECF No. 95).

8

Defendants assert that Plaintiffs' "revised" notice is nearly identical to the first overly broad notice. (*Id.* at PageID.2902).

Both sides use timeliness in their arguments—Crothall/Compass to say that the deposition notice was untimely, Plaintiffs to say Defendants waived objections because they did not move for a protective order when Plaintiffs first noticed the deposition. (ECF No. 98, PageID.3306). Neither argument is availing. Though the discovery deadline was set to close September 10, 2024, and Plaintiffs served the notice the next day, the parties had agreed to extend discovery to October 10, 2024, and the Court accepted that agreement. So the September 11, 2024, notice was not untimely. As for Plaintiffs' argument, the fact that Defendants did not move for a protective order against the depositions when the first notice was served does not waive objections. The parties were in communication about the deposition topics, then conversations waned into silence until September 11, 2024. No rule requires a party to preemptively move for a protective order on the chance that the other party might again try to notice a deposition at some point. The Court and the rules encourage meet and confers, not motion practice.

Now to the merits of the noticed Rule 30(b)(6) deposition. A "Rule 30(b)(6) notice 'must describe with reasonable particularity the matters for examination," and the deponent 'must testify about information known or reasonably available to the organization.'" *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 120-

121 (E.D. Mich. 2019). "The test for reasonable particularity is whether the request places the party upon reasonable notice of what is called for and what is not." *Id.* (internal quotations and citations omitted). Some courts have found that "reasonable particularity" requires a notice that identifies "topics with 'painstaking specificity,'" or "enough specificity to allow the corporation to designate and prepare a representative to testify." *Id.* (internal citations omitted). The noticed party must designate a person or persons knowledgeable in the topics listed in the notice to testify on the corporation's behalf. *Wicker v. Lawless*, 278 F. Supp. 3d 989, 1000 (S.D. Ohio 2017) (citations omitted). "[T]he corporation or agency in preparation for the Rule 30(b)(6) deposition must review all matters known or reasonably available to it in a good faith effort to find out the relevant facts and to collect information, review documents[,] and interview those employees with personal knowledge." *Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*, 2016 WL 9460471, at *4 (W.D. Ky. June 29, 2016). To accomplish this task in a reasonable manner, the rules require the party noticing the deposition to make clear what the corporate representative must know or bring to the deposition.

Plaintiffs' notice to Crothall/Compass contains 18 topics. Crothall/Compass challenges each one.

Before turning to the topics with specificity, the Court makes a few broad notes based on the parties' arguments. Crothall/Compass argues that fact

witnesses have already testified about certain topics, such as compliance policies and representations to employees about protecting whistleblowers (Topic 11). (ECF No. 95, PageID.2912-13). "[T]he prior testimony from the individual fact witnesses does not relieve defendant from its obligation to designate a witness under Rule 30(b)(6)." *Edwards*, 331 F.R.D. at 122 (citing *Majestic Bldg. Maint, Inc. v. Huntington Bancshares Inc.*, 2018 WL 3358641, at *12 (S.D. Ohio July 10, 2018)). Instances where Crothall/Compass says a 30(b)(6) deposition is unnecessary because a fact witness's testimony concerned a topic are not well-taken; the company must designate a person or persons to testify on the company's behalf to bind the company, rather than a fact witness, to the testimony.

In other instances, Crothall/Compass argues that a topic is duplicative of another topic in an effort to say it need not produce a witness to testify to that topic. (*See, e.g.*, ECF No. 95, PageID.2913, Topic 13). If one topic would cover information sought in another topic, then preparing a witness for the one topic should be simple. That there may be some overlap in topics is not reason to preclude the topics. The company can view the purportedly duplicative topics as breakdowns of a single topic stated with particularity. So long as the information sought is relevant and proportional, Crothall/Compass must produce a corporate representative to testify.

One final broad note.  In arguing that the deposition would be duplicative of fact witness testimony and document production, Crothall/Compass cites *Georgia-Pac. Consumer Prod., LP. v. NCR Corp.*, 2015 WL 11236844, at *2 (W.D. Mich. Feb. 23, 2015), where the court was not convinced that the 30(b)(6) deponent would provide anything different from what was already produced.  Defendants argue that it is the same here.  But its view of *Georgia-Pacific* ignores the reasoning behind the decision.  There, relevant to duplication issue,  was a large volume of information furnished that concerned the would-be 30(b)(6) topics, including "dozens of interrogatories to which it has previously responded, the tens of thousands of documents it has produced, and the hundreds of requests for admissions it has answered." *Id.*  In addition to all that discovery was the fact that the company to be deposed had no knowledge aside from what was already provided, so 30(b)(6) testimony would only regurgitate the discovery.  Here, Plaintiffs note instances where the fact witness deponents did not or could not testify on areas covered by the 30(b)(6) topics.  Nor have Defendants shown, with specificity, how the other discovery produced renders the 30(b)(6) deposition superfluous.  The Court does not see the topics discussed below so duplicative of other deposition testimony that the 30(b)(6) deposition should be precluded.

Now to the merits of the topics.

**Topic 1**:

> Any documents, electronically stored information (ESI)
> or tangible items created by, or in the possession of either
> COMPASS GROUP AND CROTHALL
> HEALTHCARE, or any of the witnesses (both those
> being offered for the deposition of Defendant, and also
> those being deposed as an individual witness on the date
> of this deposition of Defendant) in which any
> witness being deposed on this date describes any
> information outlined below in this notice of deposition.

Crothall/Compass says this topic is confusing and nonsensical because it requests testimony on every document produced during discovery.  (ECF No. 95, PageID.2907).  In response, Plaintiffs clarify that they want the corporate representative(s) to "provide or describe any documents relied upon to support their testimony."  (ECF No. 98, PageID.3307).  With this limitation from Plaintiffs, the topic is not confusing or nonsensical, nor is it a burden for a deponent to be able to provide or discuss documents he or she relies on.  This topic is accepted.

**Topic 2**:

> Contracts and agreements with Defendants Crothall and
> Compass relating to:
> i) Services provided at Defendant Tenet hospitals,
> specifically DMC hospitals;
> ii) Neutrality agreements or understandings requiring
> contractors like Defendant Crothall or Unions (SEIU) to
> avoid public criticism of hospital management or
> operations;
> iii) Terms of any contract or agreement and the
> responsibility of purchasing supplies and equipment to
> keep the hospital sanitary, specifically:
> (1) Who is responsible for pest control management (rats,
> mice, bats, roaches, etc);

(2) Who is responsible for ensuring there are enough
mops, toilet paper, and other supplies to properly sanitize
the hospital and to conduct daily terminal cleaning;
(3) Who is responsible for equipment needed to do
terminal cleaning, and cycle cleaning in operating and
procedures rooms; and
(4) Verify that there is documentation that ensures daily
terminal cleaning was occurring during the time Plaintiffs
were employed.

Plaintiffs explain that this topic aims to avoid surprise at trial in the event

that a Crothall manager testifies that the broken equipment was DMC's

responsibility to fix.  (ECF No. 98, PageID.3308).  Crothall/Compass faults

Plaintiffs for not questioning a fact witness about those details and states that its

fact witnesses can provide testimony.  (ECF No. 102, PageID.3347).  That a fact

witness might be able to provide testimony on this topic is of no moment for the

reason stated above.  In the Court's view, this topic seeks contracts or agreements

between Crothall/Compass and DMC Defendants.  This topic, in its entirety, is

relevant to Plaintiffs' claims because Plaintiffs will need to prove which defendant

bore the responsibility for safety and keeping facilities sanitary.  The Court accepts

this topic.

**Topic 3**:

All complaints or concerns made by anyone (patients,
medical staff, employees, contractors, etc) to Defendant
Crothall, hospital management, compliance
officer/representatives, customer service representatives,
ethics representatives, patient ambassadors, patient

advocates relating to safety concerns, unsanitary
conditions, pests or rodents, lack of supplies, or broken
cleaning equipment at the hospital. Time frame for this is
2021-2023.

**Topic 4**:
All complaints or concerns made by Defendant Tenet,
Defendant Crothall employees, or others about safety
concerns in the hospital leading to infections or death of
patients due to sanitization issues, lack of essential
resources, OSHA violations, or compliance concerns in
violation of laws, rules, or regulations.

Crothall/Compass argues that the breadth of these topics renders them

unreasonable. It insists that only complaints submitted by Plaintiffs are relevant.

(ECF No. 95, PageID.2909-10). Plaintiffs did not address relevance in response.

Instead, they argued that they have complaints from patients and other staff about

safety and that a corporate representative should have to testify about complaints

from others and that they have access to those complaints. (ECF No. 98,

PageID.3308). Plaintiffs' failure to adequately address relevance dooms this topic.

The Court will not analyze the amended complaint and case law to find reasons

why this topic, seeking complaints from persons other than Plaintiffs, is relevant to

their claims. As Defendants suggest, if Plaintiffs are in search of complaint

documentation, they had other discovery tools available to them during the

protracted discovery period. These topics are rejected in part. The portion that is

not rejected relates to OSHA violations—Crothall/Compass was fined by OSHA

15

during Plaintiffs' tenure at the hospital. The company must produce a representative to testify about all facts relevant to that OSHA citation.

**Topic 5**:
All complaints made by Plaintiffs to Crothall/Compass and be prepared to discuss each complaint number filed through the speakup system made by Plaintiffs.

Crothall/Compass said it would produce a deponent to testify about Plaintiffs' complaints submitted to the HR Service Center in which Plaintiffs provided their names with their complaints. (ECF No. 95, PageID.2910). This is not enough for Plaintiffs. They said that managers who have been deposed could not testify about the complaints they submitted through "speak up." The representative that Defendants said they would produce was not permitted to testify as a corporate representative. This topic is accepted. To the extent that Crothall/Compass is unaware which speak up complaints are from Plaintiffs, Plaintiffs must identify those complaints with particularity before the deposition with enough time for the deponent to acquire further information and be prepared to testify.

**Topic 6**:
All investigations conducted and fines imposed as a result of Plaintiffs' complaints to MIOSHA.

Defendants argue that they do not know which MIOSHA complaints are Plaintiffs and that the MIOSHA investigation process and fines issued have no

relevance to Plaintiff's retaliation claims.  (ECF No. 95, PageID.2910-11).

Plaintiffs insist that Defendants can learn which complaints were Plaintiffs by

talking to employees and reviewing emails and records.  They again did not

address relevance.  (ECF No. 98, PageID.3309-10).  The Court sees this topic as

potentially relevant to retaliation, but only if Plaintiffs could prove that the

defendants knew or believed that the MIOSHA complaints were Plaintiffs'.

MIOSHA complaints are confidential, which complicates this topic.  Plaintiffs

complain of ethics violations where Defendants purportedly improperly disclosed

to Plaintiffs' supervisors that the complaints came from Plaintiffs, yet here they

would require managers to question employees to learn which MIOSHA

complaints came from Plaintiffs.  That is not Defendants' burden.  Plaintiffs must

identify which MIOSHA complaints were theirs that resulted in investigations and

fines.  Any other MIOSHA complaints are irrelevant.  All that said, a 30(b)(6)

deponent is charged with testifying on the company's behalf about what the

company knew or was reasonably within the company's purview.  If the company

did not know which MIOSHA complaints were Plaintiffs, then the deponent need

not acquire knowledge in the first instance for testimony.

   This is different from Topic 5's request for testimony about complaints

made directly to Crothall/Compass through the "speak up" system because that

system intends that the company would act to address concerns.  A complaint to a

17

non-party governmental entity is different.  The government investigates the

confidential complaints and takes necessary action.  The company is not involved

in the government's investigation.

> **Topic 7**:
>
>> All complaints or concerns made by EVS (Environmental
>> Services) staff including managers, or medical staff about
>> safety concerns relating to lack of supplies, sanitization
>> concerns, or broken equipment.

The Court concludes the same as it did for Topics 3 and 4—Plaintiffs have

not shown the relevance of complaints made by others.  This topic is rejected.

> **Topic 8**:
>
>> Communications or reports made to Defendant Crothall
>> from compliance officers, ethics advisors, or any staff
>> member of Defendant Tenet about safety concerns
>> involving patients, visitors, and staff relating to
>> sanitization, lack of supplies, lack of staffing, broken
>> equipment, that involve safety concerns.

Defendants view this as duplicative of Topics 3-5.  Plaintiffs' response does

not appear to address this topic—they assert a right to testimony about Plaintiffs'

complaints, which this topic does not call for.  (ECF No. 98, PageID.3110).  This

topic is rejected.

> **Topic 9**:
>
>> Defendant Tenet/DMC communications with Defendants
>> Crothall or Compass that lead [sic] to Crothall being
>> placed on probation, delinquent, or in breach of contract.
>> Time frame for this is 2021-2023.

Defendants point to fact witness testimony that there have been no probation periods, threats of delinquency, or breach of contract.  They argue that even if there were, it would be irrelevant to the claims especially after Plaintiffs' termination in early 2022.  (ECF No. 95, PageID.2912).  In response, Plaintiffs discuss an email that mentioned "a probation issue," and want binding testimony "about this issue." (ECF No. 98, PageID.3311).  They again fail to address relevance.  It does not appear that this topic targets relevant information.  This topic is rejected.

**Topic 10**:

> Defendant Tenet/DMC communications with Defendants Crothall or Compass relating to Compliance hotlines, emails, or other methods created by Defendants to encourage reporting of safety concerns or violations of law that were used by Plaintiffs.

The Court agrees with Defendants that the two groups of Defendants' discussions about their safety concerns reporting processes are irrelevant to the claims.  This topic is rejected.

**Topic 11**:

> Defendant Crothall's Compliance policies and representations to employees about protecting those who file complaints to prevent retaliation.

This topic is accepted because Defendants' argument that fact witnesses have already testified about Crothall/Compass's policies is not well taken.

**Topic 12**:

> Be prepared to discuss all communications about
> Plaintiffs from Defendant Tenet, including but not
> limited from compliance officers and Tenet executives,
> like the example below: [example not included.  *See* ECF
> No. 95-8, PageID.2996].

Crothall/Compass contends that this request is designed to get information for a tortious interference claim Plaintiffs want to add to the complaint and they note that a fact witness testified about the email.  (ECF No. 95, PageID.2914).  Again, that a fact witness testified somewhat to this topic is unpersuasive.  Plaintiffs assert that both sets of defendants worked together to terminate whistleblowers because they share information intended to be confidential.  (ECF No. 98, PageID.3312).  The Court views communications about Plaintiffs between the defendants as relevant to the claims.  Should Plaintiffs move to amend their complaint a fourth time based on information learned, that is a bridge the Court will cross later.  This topic is accepted.

**Topic 13**:

> Discuss reports and meetings with Defendant Tenet's
> managers relating to lack of supplies, broken equipment,
> safety concerns, terminal cleaning, procedure rooms, and
> operating rooms sanitization.

Crothall/Compass argues that this topic is duplicative of the above requests.  It states that they produced thousands of pages of documents, including communications with DMC Defendants, about Plaintiffs.  (ECF No. 95, PageID.2913).  This topic is accepted because it is relevant to Plaintiffs' claims

against both sets of defendants.  Having produced documents does not satisfy the

obligation to produce a corporate representative under Rule 30(b)(6).  *See*

*Edwards*, 331 F.R.D. at 122 (citation omitted).

> **Topic 14**:
>
>> Be prepared to answer questions relating to complaints
>> made by Shenesia Rhodes, Denise Bonds, and Latonya
>> Moore to the speak up email/hotline, ethics emails,
>> 800#s, MIOSHA, and compliance reporting concerns.

Crothall/Compass makes many arguments against this topic, one of which is

easily credited.  Complaints made by non-party Latonya Moore are irrelevant, or at

least Plaintiffs made no attempt to establish relevance, so this portion of the topic

is rejected.  (*See* ECF No. 98, PageID.3312).  It argues that "ethics emails" and

"800#s" is vague, that it does not know which MIOSHA complaints were

Plaintiffs' because MIOSHA does not disclose names, "compliance reporting

concerns made" is confusing, and it would produce a fact witness regarding

complaints submitted to HR.  (ECF No. 95, PageID.2913-14).  In response,

Plaintiffs stated that the fact witness lacked access to complaints categorized as HR

complaints and that a corporate witness can access all the information and be

prepared to testify.  (ECF No. 98, PageID.3312).

Because Plaintiffs have not clarified "ethics emails" or "800#s," the Court

will not require corporate testimony on that portion of the topic.  Similarly,

"compliance reporting concerns" is confusing.  This phrase is included in a list of

places to submit complaints or concerns, but "compliance reporting concerns" does not sound like a repository for complaints.  There will be no testimony on this confusing portion.  As for MIOSHA complaints, no investigation or testimony will be ordered beyond what the corporation knew (see above).  Rule 30(b)(6) requires a corporation to produce a representative to testify to what the corporation knew and on information reasonably within its purview.   If Defendants did not know which MIOSHA complaints were Plaintiffs until now, then that it was not info it knew.  And considering an earlier argument from Plaintiffs that Defendants should question employees to find out which complaints were Plaintiffs, the information is not reasonably within Defendants' purview and would be inappropriate for Defendants to try to uncover what MIOSHA keeps confidential.  What is left is corporate testimony relating to Plaintiffs' "speak up" complaints submitted via email and through the hotline.  That portion is accepted.

**Topic 15**:

> The general over-all table of organization of Defendant CROTHALL and persons involved in Defendant CROTHALL's duties for investigating safety concerns that are made relating to hospital safety or sanitation issues, including what each investigator did regarding Plaintiffs' complaints.

Crothall/Compass says this topic is confusing, over broad, unduly burdensome, and vague.  Its does not know what "over-all table of organization" means and "hospital safety or sanitation issues" is overly broad and could refer to

several topics.  (ECF No. 95, PageID.2914).  Plaintiffs did not clarify this topic in

their response, though it seems to the Court that the parties could confer on what

"over-all table of organization" means so that the witness can be prepared to

discuss the organization.  That topic is accepted, but the parties must confer.  The

Court will limit the rest of the topic to this: the persons involved in investigating

Plaintiffs' complaints and their duties for investigating safety concerns much like

those raised by Plaintiffs.  If the parties reach an impasse on the scope of this

limitation, they should contact chambers to schedule a status conference.

**Topic 16**:

> Any and all reports, surveys, patient surveys, or
> documents regarding the investigations of safety
> concerns due to lack of supplies, broken equipment,
> or patient safety.

As with some topics above, the Court will accept this topic but limit it to

Plaintiffs' complaints and the investigation into their complaints.

**Topic 17**:

> The company website on cleaning methods and if they
> apply to DMC Harper Hutzel Hospital.

Crothall/Compass complains that the topic does not direct them to the

specific portion of the website it refers to and that a fact witness confirmed that

information on the website applied equally to all clients, including DMC.  (ECF

No. 95, PageID.2915).  Plaintiffs want corporate testimony, not only fact

testimony, which is reasonable.  They assert that the website advertises special

methods for keeping hospitals clean.  Here, too, the parties should be able to confer

about which specific portion of the website Plaintiffs want testimony about.  If

Plaintiffs cannot identify the claims on the website with specificity, then

Defendants need not produce a witness to testify about the website.  So this topic is

accepted to the extent that Plaintiffs meet their burden of specifying exactly what

portion of the website they want to question Defendants about well enough in

advance of the deposition to allow the deponent to prepare.

**Topic 18**:

> The overlap in management between Compass and
> Crothall.

Crothall/Compass asserts that this topic lacks particularity and is confusing.

True, "overlap in management" is unclear.  Plaintiffs must explain with sufficient

particularity what this topic seeks.  Once explained, Defendants must prepare their

corporate representative to testify to the topic.  If the parties reach an impasse, they

should contact chambers for a status conference.

2.    DMC Defendants

Much of what the Court concluded above applies equally to the DMC

Defendants' Rule 30(b)(6) deposition.  This includes (1) the limited scope of what

is relevant to the claims remaining against DMC Defendants, (2) the timeliness of

the notice and of DMC Defendants' motion for protective order, (3) that other

24

discovery or fact witness testimony does not preclude a 30(b)(6) deposition, (4) that only Plaintiffs' complaints are relevant, and (5) that the corporation(s) need only testify on matters it knew or was reasonably available to it. The Court will not belabor these points here and will not conduct a topic-by-topic review is it did above, except for the few notes below. The Court requires Plaintiffs to review the deposition topics with the conclusions in this Order in mind and revise them in accordance with this Order and in conference with DMC Defendants.

Some topics ask for information from Tenet, but Tenet governs many hospital systems. Any topics without limitation to specific Tenet employees or a specific hospital (e.g., Topics 6 and 7) are limited to Tenet employees (or DMC/hospital employees) who were involved in investigating Plaintiffs' claims and limited to the Harper-Hutzel hospital, and further limited to Plaintiffs' claims or claims similar to theirs. All topics must be limited to information relevant only to the remaining claims which address lack of safety and unsanitary conditions. This will limit many topics, including Topic 11 which seeks "all agreements" between DMC Defendants and Crothall/Compass; *all* agreements between them may be irrelevant but the agreement under which Crothall undertook environmental services and any agreement concerning employee complaints is relevant. When agreements are asked for, only those between Tenet/DMC Defendants and Crothall/Compass are relevant. The only complaints relevant are

25

Plaintiffs' complaints and the only investigations relevant are those conducted in response to Plaintiffs' complaints.

Topic 19 is accepted in whole—communications between the two groups of defendants relating to safety failures, breach of contract, delinquency, OSHA violations, or lack of supplies (similar to Topic 9 for Crothall/Compass) are relevant.

DMC Defendants' argument against Topic 20 is not persuasive.  (ECF No. 96, PageID.3053).  That topic is stated with reasonable particularity.  It asks for DMC Defendants' communications with Crothall/Compass about "speak up" emails or hotline call complaints that resulted in a probation notice or probation violations by Crothall/Compass.  This is relevant to the claims about lack of safety and unsanitary conditions.  To the extent "probation violations" is unclear, the parties should confer and Plaintiffs must explain or define the terms.

Topics concerning DMC Defendants' sharing Plaintiffs' complaints are irrelevant, as discussed above.

Topic 23 is relevant to the claims so it is accepted but limited to discussions about supplies, equipment, safety, etc., at Harper-Hutzel hospital.

Topic 27 is irrelevant because the claims related to the government have been dismissed.

Since the Court has accepted much of the deposition topics, the deposition will go forward. Scheduling that deposition is the last hurdle. Where Plaintiffs are directed to further explain a topic, they must accomplish this within 5 days of this Order. Defendants must review those explanations and accept or object within 5 days of service of the explanations. If there is a dispute, the parties must confer in good faith within 2 days. If Court intervention is needed, the Court expects a telephone call no later than the next business day after the meet and confers proved unsuccessful. In the meantime, the parties need to get a date on the calendar for the deposition. The deposition needs to be complete before November 22, 2024.

In sum, Plaintiffs' motion to compel the depositions (ECF No. 94) is **GRANTED IN PART**. The motions for protective order (ECF Nos. 95 and 96) are **GRANTED IN PART**.

D.    Costs and Fees

Fed. R. Civ. P. 37(a)(5)(C) provides that if a motion to compel is granted in part and denied in part, the Court may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion. The Court has compelled the CEOs' depositions, but limited the scope and the duration. Roughly half of the Rule 30(b)(6) topics have been rejected. The Court would entertain an award of half the fees and costs incurred in bringing the motions to compel at ECF Nos. 93 and 94, that is, fees and costs incurred in drafting and filing the motions, nothing

27

more.  The parties should confer.  If there is a dispute, Plaintiffs must file a bill of costs and any supporting argument.  Defendants must respond within 14 days of service of the bill of costs.  No reply will be allowed.

 **IT IS SO ORDERED**.

 The parties here may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d).  A party may not assign as error any defect in this Order to which timely objection was not made.  Fed. R. Civ. P. 72(a).  Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection.  When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in effect unless it is stayed by the magistrate judge or a district judge.  E.D. Mich. Local Rule 72.2.

Date: November 6, 2024    s/Curtis Ivy, Jr.
           Curtis Ivy, Jr.
           United States Magistrate Judge